(No. 36583.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAISY DILLON, Plaintiff in Error.

*Opinion filed January 23, 1962.—Rehearing denied March 22, 1962.*

EUCLID LOUIS TAYLOR, and HOWARD T. SAVAGE, both of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and RUDOLPH L. JANEGA, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

Defendant was indicted for the murder of her husband. She was tried by the court without a jury, found guilty of murder, and sentenced to the penitentiary for a term of 14 years. She prosecutes this writ of error, contending that the evidence does not support the conviction.

It is undisputed that defendant's husband, Earl Dillon, died as the result of a knife wound inflicted by defendant. Defendant contends, however, that she killed her husband in self-defense and is, therefore, guilty of no crime. As an alternative contention, she argues that, if the evidence proves her guilty of any crime, it is manslaughter rather than murder.

Defendant fatally stabbed her husband on the night of October 9, 1959, in front of the residence of the deceased's brother-in-law, A. C. Patterson, located at 508 South Oakley Boulevard in the city of Chicago. The two had driven to the Patterson residence in company with Charles Reed.

They entered the building while Reed remained outside in the car. Defendant and her husband started to quarrel in the hallway of the Patterson apartment, apparently over an address she had found in his pocket, and they either commenced or resumed "tussling" when Patterson opened the door to let them into the living room. The testimony of both Mr. and Mrs. Patterson would indicate that the defendant was the aggressor in this fighting. However, the defendant's testimony was that her husband had struck her in the hallway before Patterson opened the door. At any rate, blows were exchanged in the apartment, and one of the husband's blows caused defendant's lip to bleed. After this, defendant went into the back part of the apartment, where the kitchen and bathroom were situated. While defendant was gone Patterson handed Earl Dillon four brake shoes which he had purchased for Dillon's automobile. Defendant returned to the living room and shortly thereafter she and her husband left the building. Both the Pattersons testified that, just before leaving, defendant told Mrs. Patterson that, even though Dillon was Mrs. Patterson's brother, defendant was going to kill him. Defendant denies having said this. After the Dillons left, Patterson heard Earl Dillon cry out. He looked out, and saw him stagger and fall backwards.

Defendant and other witnesses testified to brutal treatment inflicted upon her by her husband going back over six years before the killing. Her testimony with regard to what happened in the Patterson home differed from that of the Pattersons in that she denied having struck her husband and stated that he struck her repeatedly. She further testified that her husband threatened to beat her when they got home. Defendant testified that she got the knife with which she killed her husband from the Pattersons' kitchen when she went there to wash after he had struck her and caused her lip to bleed, and that she got the knife in order to protect herself if he started to beat her again. She denied that she

told Mrs. Patterson that she intended to kill her husband. According to defendant's testimony, as she and her husband walked down the steps after leaving the Patterson home, her husband cursed her and threatened to beat her. She stood still and refused to follow him, and he told her to come on. She testified that he then turned around and struck her on the side of the face with the brake shoes and that she then pulled the knife and stabbed him.

Charles Reed, who had ridden with the Dillons to the Patterson residence and had remained in the car while they went inside, was, with the exception of the defendant, the only eyewitness to the killing. He appeared as a witness for the People and testified that defendant and her husband were walking from the apartment building toward the car with defendant about two steps behind, when the husband turned and defendant's hand moved out. The husband cried out, staggered and fell. Reed did not actually see whether or not defendant had a weapon in her hand, but said a knife was on the pavement immediately after the husband fell. The officer who investigated the stabbing did not find any brake shoes in the deceased's hand. Neither did he notice any marks or bruises on the defendant other than the bleeding lip.

Defendant contends that the evidence shows that she killed her husband justifiably in self-defense and, therefore, was not guilty of a crime. It is true that, under the law of self-defense, one who is deliberately assaulted in a manner to make him reasonably apprehensive of death or great bodily harm has the right to kill his assailant, if it reasonably appears to him that such action is necessary to save himself from death or great bodily harm. (*People* v. *Motuzas,* 352 Ill. 340; see *People* v. *Strader,* 23 Ill.2d 13.) However, the right of self-defense does not imply the right of attack in the first instance or permit action done in retaliation or revenge. (*People* v. *Gibbs,* 349 Ill. 83; *People* v. *Andrews,* 327 Ill. 162.) While there is much testimony

indicating that defendant had frequently been physically mistreated by her husband, that is not the question here. The question is, rather, whether the evidence shows that, at this particular instant, her husband had made an unprovoked assault upon her which put her in reasonable fear of imminent death or great bodily harm which could be avoided only by stabbing him. The only evidence in the record that suggests that this may have been the case is defendant's own testimony that her husband struck her with a brake shoe just before she stabbed him. This testimony, however, is contradicted by that of Reed, who witnessed the occurrence but saw no such move on the part of the husband. Moreover, no brake shoe was found in the deceased's hand, nor did defendant appear to have any marks or bruises indicating that she had been struck with a brake shoe. The record does not support defendant's claim that the killing was necessary in self-defense.

Neither do we find the record in this case to be such as to compel the court to find defendant guilty of manslaughter and to preclude a finding of guilty of murder. Defendant voluntarily armed herself with a knife before leaving the apartment with her husband. Although she claims to have secured the knife with the intention of using it only when necessary in self-defense she actually used it when she had no such justification. Moreover, both Mr. and Mrs. Patterson testified that defendant said she was going to kill her husband. This evidence is certainly sufficient to show the malice necessary to sustain a charge of murder. Defendant sought to impeach Patterson's testimony in this regard by showing that Patterson had testified at the corner's inquest and at that time did not testify about any statement made by defendant that she intended to kill her husband. However, there is no indication that Patterson was asked about this at the coroner's inquest, nor is there any showing that he had made any previous statements inconsistent with his

testimony at the trial. Even if there were, this would be a matter bearing upon the credibility of the witnesses rather than the sufficiency of the evidence. We have repeatedly held that where a cause is tried without a jury the law commits to the trial judge the determination of the credibility of the witnesses and the weight to be given to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the trial court. (*People* v. *Sally*, 17 Ill.2d 578; *People* v. *Golson*, 392 Ill. 252.) The evidence is sufficient to sustain the finding that defendant was guilty of murder.

In arguing the insufficiency of the evidence to prove her guilty of murder, defendant also argues that certain evidence was inadmissible and should not have been considered by the trial court. Both Mr. and Mrs. Patterson testified that when defendant and her husband entered the apartment, the husband had a broken knife in his hand and told them that his wife had tried to cut him. No objection was made by defendant to this testimony at the trial. She did, however, object to the admission of this knife in evidence, and it was admitted over her objection. She does not, however, in her brief urge erroneous rulings on the admission of evidence as a ground for reversal. We do not, therefore, regard the question of the admissibility of this evidence as properly before us. We have, however, considered the record on the basis of the unquestionably competent evidence therein, and find such evidence sufficient to sustain the verdict.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*