The People of the State of Illinois, Plaintiff-Appellee, *v.* Lee Helen Wilson, Defendant-Appellant.

(No. 71-274; )

Fifth District—December 19, 1972.

*Rehearing denied January 22, 1973.*

Linda West Conley, of Defender Project, of Chicago, (Charles I. Weitzman, Senior Law Student, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Don P. Koeneman, State's Attorney, of Chester, (James B. Zagel and Michael J. Murphy, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a jury trial in the Circuit Court of Randolph County defendant was convicted of the offense of murder and was sentenced to the Illinois State Reformatory for Women for a term of not less than 14 nor more than 24 years. Dennis Phillips, a co-defendant, pleaded guilty to the crime prior to defendant's trial and, subsequent thereto, was sentenced to a like term of 14 to 24 years in the penitentiary. In this appeal defendant contends that her guilt was not established beyond a reasonable doubt, and that the court committed reversible error in refusing a request for a continuance and in admitting into evidence certain statements which she

made prior to her arrest. Defendant also requests this court on review to reduce the crime from murder to solicitation, and, in conjunction therewith, to reduce her sentence to a term of no more than one to five years.

Defendant and Phillips were jointly indicted for the murder of defendant's husband on February 6, 1971. It is undisputed that defendant accompanied Phillips to St. Louis where they picked up defendant's husband. On their way back home to Brookport they stopped the car on the side of the road where Phillips killed the victim by hitting him on the head with a hammer and slitting his throat with a hunting knife, almost decapitating him. Defendant took no active part in these physical acts. Phillips, testifying for the State, stated that he had known defendant for a number of years and her husband for about four months. Defendant lived in Brookport and her husband lived and worked in St. Louis and only infrequently came home. Phillips stated that during the husband's absences from home he had become intimate with defendant; that he saw her at least once a day, stayed overnight at her house, and that on one occasion they had taken a trip together to Florida representing themselves as husband and wife. He stated further that defendant was having financial trouble. Starting in January, 1971, she mentioned on several occasions her desire to get rid of her husband and collect on his insurance. She first suggested that she would arrange his death while he was cleaning his guns so that it would look like an accident. She then asked Phillips if he would hit her husband on the head and knock him out, saying that she personally would then stab him. On January 5th he agreed to take her to St. Louis. On the way they discussed where they might commit the act, and they picked out a likely place. When they found defendant's husband, he agreed to come home with them, and on the way they bought a six pack of beer which defendant kept pressing on her husband insisting that he drink as much as possible. They finally stopped to relieve themselves in a field along the road and it was at this point that the murder was committed. Phillips admitted that defendant took no part in the killing itself, but stated that when they got back in the car she asked him if he was sure that he had done a good job. Also, he said, she put on a pair of nylon gloves and while he was driving she cleaned the blood from the knife using kleenex soaked in beer. Later they stopped at a cemetery and attempted to burn the gloves and bloody kleenex. They spent the rest of the night at defendant's house, and that morning Phillips threw the knife into the river and the hammer into a lake near his home.

The victim's body was found immediately and, from a telephone number found on his person, defendant was called. Accompanied by Phillips and another person who came to the funeral home to identify her hus-

band, she expressed surprise at what had happened and stated that she did not know who could have done it. She stated that she had not seen her husband for two weeks, but that she had talked with him on the telephone the previous evening. In talking with the undertaker, who was also the coroner in Brookport, she stated that her husband had two life insurance policies. In subsequent interviews with investigating officers she offered to help with any information she had but she stated that she did not have any idea who might have killed him, though she thought Phillips had been acting awfully strange. She stated that he was her third husband and that she had married him in March of 1969 and that he sent her money each week. She was last interviewed at her home on February 24. On March 4, Phillips confessed and implicated defendant, and later that same day defendant was also arrested.

The State's evidence further showed that the victim had three insurance policies on his life totalling $31,000, and that defendant was the sole beneficiary. The last policy in the amount of $13,000 was taken out in November, 1970, and defendant was paying the premiums from her own bank account. She was receiving between $90 and $110 a week from her husband and her bills approximated $400 per month. The hammer and knife were recovered and were placed in evidence together with the charred gloves which had been found in the cemetery described by Phillips.

Another witness, a friend of defendant's, stated that defendant had talked to her about the murder but she did not mention anything about Phillips. However, she did say that her husband's son and daughter-in-law may have had something to do with it.

Testifying in her own behalf defendant stated that she did not plan the killing, did not participate in it, and did not clean the knife as Phillips had testified. She admitted that she and Phillips had been intimate, and that together they had picked up her husband in St. Louis and had stopped on the way home where Phillips had committed the murder. She did not see the actual killing but she heard the blow. She did not go to the police, and she lied to them because she was afraid Phillips would kill her as he threatened to do every day.

Defendant first contends that the refusal of the trial judge to grant a continuance of the cause denied her effective representation of counsel. Her counsel was appointed on March 19, 1971. In May and June he filed various motions all of which were granted—motions for a Bill of Particulars, a List of Witnesses, a Psychiatric Examination, Production of Documents, and Substitution of Judge. On June 14 a motion for a continuance was filed and repeated on June 28, alleging inadequate time to

prepare. The motion was denied and the case was tried on July 6 as scheduled.

██ It is uniformly held that a motion for continuance is addressed to the sound discretion of the court, and a conviction will not be reversed unless there is some showing that the accused was prejudiced at the trial by its refusal. (*People v. Jennings*, 267 N.E.2d 511; *People v. Johnson*, 110 Ill.App.2d 292.) As stated in *People v. Clark*, 9 Ill.2d 46, the granting of a continuance to permit preparation necessarily depends on the particular facts and circumstances surrounding the request. Here the trial did not commence until over three months after appointment of counsel and almost two months after counsel was furnished with a list of witnesses. The witnesses were not numerous, nor was the case complicated. In effect, defendant admitted substantially all facets of the State's case except for her denial that she planned the killing or aided in its commission. In our opinion the trial court did not abuse its discretion in refusing a continuance, nor is there any showing whatsoever that defendant was in any way prejudiced by such refusal.

██ Next, defendant contends that her pre-arrest statements were improperly admitted into evidence and that she was thereby forced to take the stand in violation of her constitutional right to remain silent. At the funeral home, and subsequently, she had stated that she had no knowledge of how her husband had been murdered, that she had last seen him two or three weeks prior to his death, that he had only two life insurance policies, and that she was not dating Dennis Phillips. None of these statements was truthful, as defendant admitted in a statement made the day after her arrest. Defendant argues that such statements were irrelevant to the issue of guilt, that they did not contain any facts that would infer [sic] participation in the crime, and that therefore they were inadmissible as substantive evidence. She contends that they should have been used only for impeachment purposes after she had taken the stand, and that their admission as substantive evidence wrongfully forced her to take the stand. We cannot agree. It is true that all evidence introduced must be relevant to the guilt or innocence of the accused, but as stated in (*People v. Gambony*, 402 Ill. 74), any attempt to conceal, or otherwise to suppress evidence, or obstruct an investigation of an issue, is relevant upon the trial of that issue as tending to show a consciousness of guilt. Here defendant's statements obviously were an attempt to conceal and suppress evidence against herself, and further they were intended to obstruct the investigation of the crime. In effect, they were *false exculpatory statements* revealing defendant's consciousness of guilt and, as such, they were properly admissible for the jury's consideration.

*United States v. Karigiannis,* 430 Fed.2d 148; *United States v. Riso,* 405 Fed.2d 134.

■■■ Finally, defendant contends that proof of her involvement in the crime was unconvincing where her conviction rested upon the testimony of a man who had been promised a minimal sentence in return for his testimony. She argues that the testimony of an accomplice is subject to grave suspicion and must be considered with caution. There can be no question about this rule of law, but nonetheless, as stated in one of defendant's cited cases (*People v. Davis,* 406 Ill. 215), a conviction may be based on such testimony if it is of such a character as to convince the jury of defendant's guilt beyond a reasonable doubt. Here it was revealed to the jury that defendant's accomplice had bargained for his minimum sentence of 14 to 24 years by agreeing to testify against defendant. This fact was stressed by defense counsel in cross-examination and in final argument, and the jury was fully instructed as to the need for caution in considering the testimony of an accomplice. Under such circumstances, and in view of the record which we have examined carefully, we can only agree with the jury's verdict that defendant was proved guilty as charged beyond a reasonable doubt.

■■ The judgment of the Circuit Court of Randolph County is affirmed, and defendant's request for a reduction of sentence is denied for the reason that the minimum sentence imposed is the minimum statutory penalty for the offense with which she was charged and the maximum is now less than recommended by the ABA standards.

Judgment affirmed.

G. MORAN, P. J., and EBERSPACHER, J., concur.