THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EVERN LIDDELL, Defendant-Appellant.

(No. 74-365;

Third District—October 23, 1975.

BARRY, J., dissenting.

Michael J. Warner, of Rock Island, for appellant.

David DeDoncker, State's Attorney, of Rock Island (F. Stewart Merdian, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Rock Island County, finding defendant guilty of voluntary manslaughter, with a consequent sentence of 3 to 10 years in the penitentiary. The action was based upon the fatal stabbing of Willie Sims in Rock Island on the evening of January 16, 1974.

On appeal in this court, defendant basically contends that the State failed to disprove his theory of self-defense beyond a reasonable doubt. From the record it is apparent that the incident occurred in the back yard of a friend of defendant named Shorty Jenkins. Jenkins had a shed in his yard where his friends often congregated for a few drinks, conversation, and perhaps some friendly gambling. On the evening of January 16, 1974, Jenkins and J. C. Buchner were in the shed cleaning up when defendant and James Oliver arrived. Later the decedent, Willie Sims, came in.

Jenkins, who was the only one present who testified at the trial, had first made a statement to police in which he mentioned hearing the defendant and the decedent arguing about some money and also that Sims left the shed first. In his testimony in court, Jenkins indicated that he did not hear an argument and, also, that he didn't notice which one of the two men left first. The two men went outside the shed and the fatal stabbing occurred thereafter. According to the statement made by defendant, Sims owed him a couple of dollars as a result of shooting dice, but that he "just forgot about that" when Sims said he wouldn't pay. When they left the shed, however, according to defendant's statement, Sims grabbed the defendant by the neck and choked him and said "I am going to knock you out." At that point defendant claimed that he pulled a pocket knife from his right pants pocket and "cut" Sims.

Defendant said he was unaware of the extent of Sims' injury, if any, and he left the premises immediately. Shortly thereafter the victim was discovered on the front porch of the Jenkins home where a trail of blood was found. Police were called and Sims was taken to a hospital. Despite intensive efforts by a cardiac arrest team, Sims died 15 minutes later. The examining doctors determined that the cause of death was a 2″ knife wound which penetrated Sims' chest at the base and to the left of the breast bone.

Two and a half hours after the police had arrived on the scene, a detective went to defendant's house and picked him up for questioning. After he was advised of his rights twice, defendant consented to make a

statement. Besides the detective, his stenographer and defendant's sister, Carrie Silas, were present. In his statement, defendant Liddell admitted stabbing Sims, but said he did so entirely in self-defense. The only evidence presented by defendant was the testimony of three character witnesses, including the probation director of the Fourteenth Judicial Circuit of Illinois, the Assistant State's Attorney for Rock Island County, and defendant's employer on the Chicago, Rock Island and Pacific Railroad. They all testified to knowing defendant and knowing his reputation for peacefulness in the community.

■■ The sufficiency of evidence to disprove defendant's theory of self-defense is a difficult issue, particularly in cases where there are no eyewitnesses to the incident other than defendant himself. The various elements of self-defense as outlined in *People v. Dillard*, 5 Ill.App.3d 896, 901, 284 N.E.2d 490, appear to be present in the instant case, if defendant's version of the incident, as recounted in his statement, is believed. Since self-defense is an affirmative defense, where it is raised, the burden is on the State to disprove it beyond a reasonable doubt in order to show defendant's guilt. (*People v. Warren*, 33 Ill.2d 168, 173, 210 N.E.2d 507.) Where, as here, defendant testifies as to what occurred at the scene of the crime, he must tell a reasonable story or be judged by its improbability. (*People v. Morehead*, 45 Ill.2d 326, 330, 259 N.E.2d 8.) This rule would seem applicable to a statement by a defendant, introduced in evidence, where defendant does not take the witness stand and where the statement is the only direct evidence of what occurred at the time of the stabbing. The trier of fact need not believe defendant's version even though it was the only one, and it may consider other facts and circumstances in the record which tend to contradict defendant's story or at least raise serious questions about its probability (*People v. Towers*, 17 Ill.App.3d 467, 474, 308 N.E.2d 223; *People v. Halley*, 13 Ill.App.3d 719, 723, 300 N.E.2d 645; *People v. Young*, 11 Ill.App.3d 609, 615, 297 N.E.2d 298). There need not be actual rebuttal of defendant's testimony, but only a sufficient showing of circumstances from which defendant's guilt might be concluded by probable deduction. *People v. Warren*, 33 Ill.2d 168, 174-75; *People v. Halley*, 13 Ill.App.3d 719, 723, 300 N.E.2d 645.

■■ Where, however, there is only one version of the incident, and it is not improbable nor contradicted in material part, and is in fact corroborated by evidence in the record, the trier of fact may not disregard or reject that version (*People v. Jordan*, 4 Ill.2d 155, 162-63, 122 N.E.2d 209; *People v. Halley*, 13 Ill.App.3d 719, 724-25). Even if defendant's story here is wholly rejected, that fact alone does not supply the necessary proof beyond a reasonable doubt, and the remaining evidence

would not be sufficient to prove guilt of defendant beyond reasonable doubt. To conclude otherwise on the record would require a resort to speculation and conjecture. Under such circumstances, there cannot be enough proof to sustain a conviction. *People v. Jordan,* 4 Ill.2d 155, 163; *People v. Hess,* 24 Ill.App.3d 299, 303, 320 N.E.2d 344; *People v. Halley,* 13 Ill.App.3d 719, 724; *People v. Dillard,* 5 Ill.App.3d 896, 903, 284 N.E.2d 490.

Defendant's version of the stabbing, as presented in the instant case, is neither improbable nor is it contradicted in material part. His version is in fact corroborated substantially by the testimony of the State's own witness, Dr. Kaplan, who examined the defendant on the day following the incident. Dr. Kaplan, using a Creato-phospho-kinase (CPK) test found an abnormally high level of kinase in Liddell's blood, which positively indicated injury to the muscles or the brain tissue within the previous 12 to 24 hours. He also found tenderness in the neck area and a limited range of motion. Thus, even if defendant's complaints about a sore neck are given little weight as being self-serving, it appears that he did suffer some neck injury, consistent with his story that Sims jumped him and began choking him. The hoarseness and unusual character of defendant's voice when he was first interviewed by the police also tends to support his contention that he was choked by Sims. If we also consider that defendant was 54 years of age, 5′ 4″ tall and weighed 140 to 145 lbs., it seems unlikely that he would attack Sims, who was only 25 years of age, over 6′ tall, weighing 180 to 185 lbs. and who was muscular and well developed.

Defendant's position was also supported by strong character testimony. His employer testified that defendant had worked well at his job on the railroad for over 17 years. An Assistant State's Attorney who worked with defendant for several summers on the railroad testified that defendant was "probably the only individual who never in fact did get angry and want to fight." The circuit probation director also testified, as did the other two witnesses, to defendant's long-time reputation for peacefulness in the community. Defendant had no criminal record.

The fact that a motor was running in an unidentified car resembling one which may have been driven by Sims is of no probative value other than to speculate that Sims got in his car and then decided to leave it quickly to assault the defendant. The only evidence which is asserted to support the State's theory of the stabbing, consists of a couple of statements made by Shorty Jenkins to the police after the incident, that Sims left the shed first and later, at the trial, that he couldn't remember who left first. Nothing of value in determining defendant's guilt could be established by such testimony and any conclusion from such testimony

would involve only conjecture and supposition. Similarly, the fact that a hat, presumably belonging to Sims, was found next to him on the porch to which he walked while a hat which presumably belonged to Liddell was found on the ground just outside the shed where Liddell said the struggle took place and where he said he was choked violently, would only operate to support defendant's version of what occurred.

On the basis of our consideration of the entire record, we can only conclude that evidence tending to establish guilt on part of defendant is so unsatisfactory as to leave us with a grave and substantial doubt as to defendant's criminal culpability. Such being the case, we have concluded that we must reverse the conviction, and, accordingly, the judgment of the Circuit Court of Rock Island County is reversed. See *People v. Lewellen*, 43 Ill.2d 74, 78.

Reversed.

STOUDER, P. J., concurs.

Mr. JUSTICE BARRY, dissenting:

Defendant did not testify at the trial. His out-of-court statement of January 17, 1974, although it contains an admission as to the fact of stabbing, does not purport to be a confession of guilt but a recital of exculpatory matters in justification. It was offered by the State and was relevant to its case for two purposes only, *viz.*, (1) to show defendant's admission of involvement in the killing, and (2) to show his utterance of exculpatory statements that are shown false by other proof, and which may therefore be considered as circumstantial evidence of defendant's consciousness of guilt. (*United States v. Riso*, 405 F.2d 134 (7th Cir. 1968), *cert. denied*, 394 U.S. 959; *People v. Wilson*, 8 Ill.App.3d 1075, 291 N.E.2d 270, 273 (5th Dist. 1972).) To the extent that its self-serving content is uncorroborated and found to be in conflict with other items of evidence and fair inferences, the circuit judge, as trier of fact, was entitled to reject it even though the State did not directly rebut the exculpatory language (*People v. Warren*, 33 Ill.2d 168, 210 N.E.2d 507 (1965).) His judgment should not be disturbed here where it is not clearly erroneous. *People v. Anthony*, 28 Ill.2d 65, 190 N.E.2d 837 (1963).

The majority of this court conclude that the version of facts contained in defendant's out-of-court statement is the sole version of what occurred, and that defendant's assertions that he was being choked by decedent and therefore acted in self-defense is corroborated by medical proof. Since defendant's statement was given many hours after the stabbing and after considerable opportunity for reflection, I think the circuit court correctly tested its veracity by measuring it closely for its capacity

to withstand successfully, a detailed scrutiny. I find other evidence and compelling inferences which support the circuit judge's conclusion that many important parts of defendant's extrajudicial statement are improbable and unworthy of credence.

There was evidence admitted to the record of a dying declaration by decedent that "Liddell did it." No claim is made here that this evidence was improperly received. There is conflicting proof as to whether decedent and defendant quarreled in the shed about a gambling debt, and in respect to the important matter of who left the shed first, or whether they left together as defendant's statement asserts. Jenkins admitted during the trial to having given a statement to the police that decedent left the shed first and defendant followed after him, but claimed at the trial that he couldn't remember who left first.* Defendant's version that he and decedent left together, and that decedent "jumped" him as they got outside leaves wholly unexplained the fact that after the killing, an automobile matching the description of the one decedent had been using was found standing in the alley near the shed with its motor still running. That fact considered with the other proof seems more consistent with the conclusion and inference that defendant and decedent had been playing dice in the shed and quarreled over decedent's refusal to pay; that the decedent got up and left first, got into his automobile and started the engine to leave the area when he was interrupted in his departure by defendant who followed him out. The accuracy of defendant's self-serving declaration as to who first accosted whom becomes colored by doubt and improbability because of its failure to account for the important item of evidence that the motor of decedent's car was found running. The medical evidence as to decedent's muscle injury, even if it be related to the claim of a sore neck, lends no corroborative support whatever to the claim that decedent was the aggressor.

Defendant admitted in his out-of-court statement that he knew what he was doing and what was happening, that he took a six-inch pocket knife from his front pants pocket while decedent was choking him, that he opened the blade and, holding the knife in his right hand, he "cut" decedent. He said he did not know where he cut decedent, and that he lost his knife at the scene. The knife was never found. He also stated as excuse for leaving the scene and failing to give assistance that he did not know decedent was hurt because decedent just walked away, not toward the car, but toward the Jenkins house.

---

* Even inconsistent statements of a witness do not per se destroy the probative value of the testimony; it ordinarily remains for the trier of fact to determine where the truth lies. *Guthrie v. Van Hyfte*, 36 Ill.2d 252, 222 N.E.2d 492, 495 (1967).

The physical evidence is that decedent was wearing a heavy, leather-trimmed, blue, outer coat with a pile lining over other winter clothing, and that defendant plunged his knife through all decedent's heavy winter dress deeply into the vital area of the heart. The location of the cut through decedent's outer coat indicates there was no disarray of clothing from any struggle. The "cut" into decedent's body angulated downward and outward from the chest, which strongly suggests that it was delivered overhand by defendant who was eight inches shorter than decedent. The cut collapsed decedent's left lung and entered the heart. The wound was at least 2 inches deep into the body and 2 inches long; it was a "gaping" injury in the sense that the full thickness of the chest wall was penetrated and the tissues separated right down into the chest cavity which was exposed. The bleeding was profuse. Decedent did not leave in the direction of his automobile. Obviously, he had been immediately disabled from using it. As he moved away from the defendant, decedent left a trail of blood from the shed near the alley all the way around to the front porch of the Jenkins house where he collapsed on the steps. He was dead within fifteen minutes to one-half hour from loss of blood. All his clothing, including the outside of his blue coat, became drenched with blood. Defendant did not report the incident to any of his friends in the shed or solicit from them any help in locating his knife. He "walked away" and went home. When the police arrived at his home later to take defendant into custody, they were required to wait outside while defendant redressed. Jenkins testified that he was in the shed during the time the stabbing occurred outside and that he heard no altercation or any pleas of defendant's. No testimony was offered that anyone in the shed heard pleas or commotion outside.

Notwithstanding the conclusion of the majority of this court that the automobile matching the description of defendant's is an "unidentified" vehicle, and that all inference contrary to those they accept are speculation, I am persuaded that the circuit judge could justifiably conclude from this record that defendant's self-serving assertions that he did not know decedent was hurt and that the knife became lost were so improbable as to be unworthy of credence. The nature of the injury and description of the scene supports the more reasonable inference that defendant left the area and did not report the incident to his friends in the shed because he was blood-splattered and was carrying a badly stained weapon, and that he fled directly home where he changed clothes. If the circuit judge disbelieved the exculpatory declarations, as he apparently did, he was entitled to consider defendant's flight from the scene and the disappearance or suppression of the knife as further circumstantial evidence of guilt. I do not concur in the great significance

given by the majority to the purported fact that what presumably was defendant's hat fell off in the struggle outside the shed (which I believe could operate to support several other versions of what occurred), nor do I concur in their confident assertion that the dying decedent "walked" to the porch, or in their strained conclusion that an armed shorter man would not likely attack a taller unarmed man.

Defendant has raised and argued a second issue that the circuit court erred in denying his motion to suppress his extrajudicial statement. The only evidence in the record which even purports to suggest a self-defense theory is contained in the declarations of that instrument; it's difficult to perceive, therefore, how the failure to suppress the statement could be considered harmful to defendant. The evidence was sufficient to support a conviction without it. In any event, I consider the issue waived for the reason that the motion is not set forth in the excerpts. Courts of review will not enter upon a search of the record to find reasons to reverse.

I would affirm the judgment of the circuit court.