THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
VERNEATER CHAPMAN, Defendant-Appellant.

First District (3rd Division)   No. 76-824

Opinion filed June 8, 1977.

554

Patrick A. Tuite and Melanie Vogl, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendant, Verneater Chapman, was charged with having committed the offense of voluntary manslaughter in a two-count indictment, as follows:

> 1. acting under a sudden and intense passion, resulting from serious provocation by Robert L. Rice, shot and killed the said Robert L. Rice with a gun, without lawful justification. Ill. Rev. Stat. 1975, ch. 38, par. 9—2(a).
>
> 2. intentionally and knowingly killed Robert L. Rice with a gun without lawful justification, believing the circumstances to be such that they would justify or exonerate the killing but her belief was unreasonable. Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b).

After a bench trial the defendant was found guilty of voluntary manslaughter and sentenced to 5 years probation with the first year to be served in the House of Correction under the Work Release Program. The issue presented for review is whether the evidence presented at trial was

sufficient to prove the defendant guilty of voluntary manslaughter beyond a reasonable doubt.

On March 30, 1974, at approximately 10:15 a.m., the defendant shot and killed Robert L. Rice, the man with whom she had been living, in their apartment at 8235 South Ellis Avenue, Chicago, Illinois. She immediately went to the nearby apartment of her nephew, Thaddeus Brown, and he called the police. Officer Crisler testified that Brown met him at the doorway of the apartment building, surrendered the .22-caliber handgun and told him, "My aunt just shot her boyfriend." Officer Crisler found the deceased on the floor of the bathroom in the apartment.

After being advised of her rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the defendant told the officer she had been asleep on the couch and awoke when Rice hit her on the head and told her to get her things together because he had another woman coming in. When Rice continued to beat her, she shot at him three times with a gun she kept under the pillow. The defendant told Officer Crisler she and Rice were separating and one of them was going to move. Crisler noticed a bed resting against the wall, and clothes and other articles were stacked in the hall. The defendant did not ask to see a doctor or complain about having pain. Officer Crisler did not see any bruises or marks on her legs, face or arms, even though she was wearing a short nightgown; however, he did not check for lumps or scratches on her scalp or have a matron examine her. He did not see any items of furniture which were broken or out of place, including the coffee table near the couch on which Ms. Chapman had been sleeping.

There were a number of stipulations, as follows: (1) If Thaddeus Brown were called he would testify that the defendant at 10:15 a.m. on March 30, 1974, knocked on his door in an excited state and told him she had shot Robert Rice after quarreling with him; (2) if Officer Grefsheim were called, he would testify that no weapon was found on the deceased; one expended bullet was found just inside the front door and another was found on the floor in the center of the living room; and the .22-caliber revolver used by the defendant contained four expended cartridges and two live cartridges; (3) if a doctor specializing in forensic pathology were called he would testify that the deceased was shot once in the thigh and once in the back, and the bullet which entered from the back lacerated the left lung and the aorta and lodged in the chest cavity causing death; and (4) no evidence of alcohol, tranquilizers or narcotics was found in the body of the deceased.

The defendant testified that she and Robert Rice had lived together for five years. She had worked at the Brach Candy Company since 1968. Robert Rice had also worked there, but he was fired for attacking her in

the women's locker room. She testified that Rice beat her about every other weekend and she had placed him under a peace bond on three occasions. See Ill. Rev. Stat. 1975, ch. 38, par. 200—1 *et seq.*

She related that she arrived home from work at 1:15 a.m. on the day of the shooting and slept on the couch as she usually did when alone. She kept a .22 revolver (that Rice had given her for protection) under her pillow. She awoke when Rice hit her "up side the head." She tried to get up and he kicked her in the stomach and knocked her back down. He told her to get her property and get out because he had another woman. As he raised his foot to kick her again, she started shooting. She claimed she did not point the gun anywhere in particular but just wanted him to leave her alone and she feared for her life. Rice ran to the front door which was locked and then ran into the bathroom. She did not know whether she was still shooting when Rice ran toward the front door.

The defendant further testified that she was not angry when Rice told her he was bringing in another woman, because "he was always talking." Although Rice had often threatened to move out, she indicated that the bedroom set which Officer Crisler saw stacked against the wall had been replaced by another set.

The defendant contends the State failed to prove beyond a reasonable doubt that she did not act in self-defense as provided in section 7—1 of the Illinois Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 7—1). Self-defense is an affirmative defense (Ill. Rev. Stat. 1975, ch. 38, par. 7—14), and the State has the burden of disproving that defense beyond a reasonable doubt. *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681; *People v. Liddell* (1975), 32 Ill. App. 3d 828, 336 N.E.2d 815; Ill. Rev. Stat. 1975, ch. 38, par. 3—2(b).

■■ She also argues her actions were sanctioned by section 7—2(b) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 7—2(b)) which provides that a person may take action to prevent the commission of a felony in the home. She maintains she acted to prevent the commission of a forcible felony, an aggravated battery against herself, which was occurring in her home. However, that argument is not applicable here because the victim, who shared the apartment with her, was not an intruder. *People v. Brown* (1974), 19 Ill. App. 3d 757, 312 N.E.2d 789.

A person commits the offense of voluntary manslaughter when she kills another without lawful justification while acting under a sudden and intense passion resulting from serious provocation by the individual killed; or, if in taking another's life, she believes that she is in danger of losing her own life or suffering great bodily harm but this belief is unreasonable. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2.) It is only where a person is acting under a reasonable belief of danger of imminent death or great bodily harm that use of deadly force is justifiable. Ill. Rev. Stat.

1975, ch. 38, par. 7—1; *People v. Davis* (1975), 33 Ill. App. 3d 105, 337 N.E.2d 256.

■■ The issue of self-defense is one of fact (*People v. Jordan* (1960), 18 Ill. 2d 489, 165 N.E.2d 296), and it is the function of the trier of fact to resolve conflicts in the evidence to determine the credibility of witnesses. (*People v. Holtz* (1974), 19 Ill. App. 3d 781, 313 N.E.2d 234.) A reviewing court will not disturb the trial judge's finding unless the evidence is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People v. Adams* (1969), 113 Ill. App. 2d 205, 252 N.E.2d 35; *People v. Burnett* (1975), 35 Ill. App. 3d 109, 341 N.E.2d 86.) In this case, the defendant testified she was in fear for her life when Rice beat her on the head and kicked her in the stomach. However, the circumstances do not indicate that Rice was using deadly force upon her. She testified that Rice beat her frequently, and she had placed him under peace bond on three occasions. The evidence does not establish any reason which would require the court to believe that this assault was more serious than the others. Officer Crisler saw no bruises or marks on her face, arms or legs and she did not claim to be in pain or request to see a doctor. The furniture was not upset and the coffee table next to the couch where the beating took place had not been disturbed.

There was also evidence to indicate that the defendant could have been motivated by anger rather than self-defense. She testified that she was in love with Rice even though he abused her, and Rice told her he was going to leave her for another woman. The bullet which killed Rice entered his back and was only one of several she fired at him. At trial, she stated she did not know whether she was still firing at him when he apparently tried to get out of the front door before retreating to the bathroom, but an expended bullet was found on the floor by the front door.

The defendant provided the only direct testimony but the trial judge need not have believed the defendant's version even though it was the only one, and he may have considered the facts and circumstances in the record which tended to contradict the defendant's story or raise serious questions about its probability. (*People v. Towers* (1974), 17 Ill. App. 3d 467, 308 N.E.2d 223.) Here, the trial judge found it to be decisive that the fatal shot entered the back of the deceased.

■■ In response, the defendant cites cases which hold that self-defense may not be negated by the fact that several shots were fired or that the last shot was fired after the attack was over, because the victim is not expected to have perfect judgment. (*Brown v. United States* (1921), 256 U.S. 335, 65 L. Ed. 961, 41 S. Ct. 501; *People v. Bailey* (1975), 27 Ill. App. 3d 128, 326 N.E.2d 550.) However, these cases presuppose that the initial use of deadly force was justified. In this case, the circumstantial evidence indicated that the defendant was not reasonably in fear of her life and that

she fired the fatal shot when Rice's back was turned as he tried to escape through the front door. We cannot say the trial judge erred in his evidentiary evaluation.

■■ At oral argument the court, *sua sponte*, raised an issue concerning the trial court's adjudication that the defendant was found guilty of voluntary manslaughter under both counts of the indictment. Supplemental briefs were filed addressing this issue in view of the inconsistency of mental states required for the commission of the offense in its two forms. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(a), 9—2(b); *People v. Echoles* (1976), 36 Ill. App. 3d 845, 855, 344 N.E.2d 620; *People v. Clark* (1973), 15 Ill. App. 3d 756, 759, 305 N.E.2d 218.) The State maintains that this issue has been waived and should not be reached in deciding the merits of the appeal (*People v. Dillon* (1962), 24 Ill. 2d 122, 180 N.E.2d 503). However, since the trial court was asked to rule on this matter, we reject the invitation to treat the issue as waived.

■■ ■ We are of the opinion that both forms of voluntary manslaughter cannot be committed by one person in a single act. We are not persuaded that the inconsistency and the mutual exclusivity of the two forms of voluntary manslaughter would require an outright reversal of the findings on both counts of the indictment (*Cf. United States v. Maybury* (2d Cir. 1960), 274 F.2d 899). While the evidence herein possibly could support a conviction on either count, the case was prosecuted and defended under the theory of unreasonable belief in justifying circumstances (*People v. Viser* (1975), 62 Ill. 2d 568, 583, 343 N.E.2d 903; Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)). The court's remarks prior to judgment also indicate that the evidence established the offense under section 9—2(b) beyond a reasonable doubt, and the sentence was entered as if only one count was sustained. Finally, defendant in her brief argued solely that the State had failed to prove that she had not acted in self-defense.

Therefore, to the extent that the record reveals a conviction under the first count of the indictment, charging voluntary manslaughter under section 9—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(a)), that conviction is reversed. Judgment of conviction on the second count of the indictment, charging voluntary manslaughter under 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)) and the sentence entered on the judgment are affirmed.

Affirmed in part; reversed in part.

SIMON, P. J., and McNAMARA, J., concur.