THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KENNETH RICE, Defendant-Appellant.

First District (5th Division)   No. 80—1525

Opinion filed July 30, 1982.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and Marie Quinlivan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of murder[1] and given a 25-year sentence. On appeal, defendant contends that (1) he was entitled to a hearing on his motion for substitution of judges; (2) he was prejudiced because of the delayed production of statements by the State and because the court permitted the State to add a name to its list of witnesses; (3) the court erred in instructing the jury on felony murder and in failing to do so on the lesser included offense of voluntary manslaughter; and (4) he was not proved guilty beyond a reasonable doubt.

Prior to trial, the court granted a defense motion for substitution of judges and, after the cause was transferred to another judge, a second such motion was denied without a hearing.

At trial, Leroy Fleming testified that he, his brother Anthony (deceased), James Terrell, and Mark Cannon drove to Merrill Park in Terrell's Buick 225 to "smoke some reefer and drink beer"; that at the park Anthony was sitting in the front passenger seat and he (Fleming) was behind him, Terrell was at the wheel, and Cannon was in the back seat behind Terrell; that Vincent Moore and another man (Jeff) also went to the park and were in the car parked next to them; that they passed around a joint and, after 10 or 20 minutes, defendant—whom he had known for 3 to 5 years—approached from the rear of the car, opened the door, leaned in, and shot Anthony in the head with a revolver; and that no words had been exchanged prior to the

---

[1]Another indictment for armed robbery was dismissed at the close of the State's case.

shooting. Fleming said that defendant then ordered him out of the car at gunpoint and told him to lie on the ground; that Terrell later drove away, after telling him to take Anthony out of the car; that he and Anthony then laid in the snow until the police arrived; that the police took his brother to the hospital, and he went with them; that later, at the police station, he told the officers that a man named Ken had shot his brother; and that the next morning he went with the officers when they arrested defendant.

On cross-examination, Fleming stated that he had not known Vincent Moore prior to that day but he had known Jeff for about one year. He denied telling the police that two men had approached the car before the shooting and denied that he and Anthony had gone to the park to rob anyone. He admitted that in the statement he gave the police he did not state that defendant had leaned into the car when he shot deceased.

Police officer Barrett testified in pertinent part that on the evening of the shooting, she and a partner went to Merrill Park in response to a call, and that upon her arrival she saw deceased in the front seat of a car with what appeared to be a bullet wound in his forehead.

Investigator Manella testified that after the occurrence Fleming told him that he was in a car with his brother and two other persons when his brother was shot by a man named Ken, and that the next day Fleming went with him and other officers to arrest defendant. Investigator Corless testified that when he searched Terrell's car, he saw no blood but noticed that it appeared to have been recently cleaned. Officers Corless and Manella both testified that during questioning at the station, defendant told them that while he was standing next to a green Buick in Merrill Park talking to deceased, who was seated in the car, the latter displayed a weapon and began waving it around; that he told deceased to put the gun away, but he did not; and that in the ensuing struggle the weapon discharged, wounding deceased in the head.

Dr. Malak, who performed an autopsy on deceased, stated that he had a gunshot wound to the forehead between the eyes; that there was gunpowder around the wound indicating a very close range gunshot; that the autopsy four days later disclosed no gunpowder residue or evidence of an imprint of a tool or weapon on deceased's hands; and that washing of the hands, a lapse of time, and the type of ammunition used could affect the results of his test to determine whether a person had used a gun.

Eric Moore testified that on the night of the shooting he was in a

game room with Donald Gatewood, Rory Green, Anthony Fleming, and a man named James; that Gatewood suggested they commit a robbery in Merrill Park, and he went there with Gatewood, Green, and defendant; that he, Gatewood, and Green had guns; that at the park he noticed two cars side by side—one a white Grand Prix to his left, and the other a green Buick to his right; that after they approached the cars from the rear, Green went to the driver's side of the white car; that he and Gatewood stood between the cars, and he thought that defendant went to the passenger side of the green car, which had four people in it; that after Gatewood opened the passenger door of the white car, he (Moore) heard a gunshot; that at this point defendant was on the passenger side of the green car; that he then walked around the green car and saw a man partly in and partly out of the car with his face in the snow; that people started getting out of the green car, and he heard Leroy Fleming scream, "You shot my brother"; and that, as he ran from the scene, Gatewood, Green, and defendant caught up with him.

On cross-examination, Moore admitted that he pleaded guilty to a charge of attempted armed robbery in connection with this case and was given six months in custody with two years' probation; and that, in a statement he gave police following his arrest, he did not mention either having gone to the other side of the Buick, having seen a person lying in the snow, or having seen defendant standing a few feet from the body lying in the snow. He also said that he went to the park to rob Vincent Moore and that deceased knew of the planned robbery.

Donald Gatewood testified that he was at the game room with Eric Moore when Green and defendant came in; that he and Green both had guns; that after leaving the game room they went to a bowling alley and a liquor store and then he and Eric Moore walked to Merrill Park followed by Green and defendant; that when he arrived at the park he saw two cars parked next to each other; that he walked between the cars and told one of the people in the Grand Prix to roll down the window, and while pointing a gun at the man in the passenger seat he asked where the "reefer" was; that while his head was in the car he heard a shot and then someone said, "You shot my brother"; that he walked around to the passenger side of the green car and saw a person lying half in and half out of the green car with his head in the snow; that he knew it was deceased; that he and Eric Moore then left the scene; and that he subsequently pleaded guilty to his involvement and was given six months in the UDIS program with two years' probation.

On cross-examination, Gatewood stated that deceased, Cannon, and Jeff Clark were a part of the armed robbery plan; that Clark was one of the men in the white Grand Prix; that he had obtained his gun from Eric Moore; and that Vincent Moore was the intended victim of the robbery.

Rory Green testified that he was currently charged with the murder of deceased; that he was at the game room when defendant asked to borrow his gun to use in a robbery; that he gave him the gun and then left the game room with him, Gatewood, and Eric Moore; that they walked to the park intending rob Vincent Moore; that he went to the driver's side of Moore's car and while there he heard a gunshot but, seeing nothing unusual, he proceeded to rob Moore of $150 and his wallet; that he then ran out of the park and, about a block away, met defendant, who told him he had shot someone by accident; that defendant handed him the gun he had given to him earlier and told him to wipe off the fingerprints; that he then went to Bruce Davis' house, where he hid the gun in some bushes in the backyard of the house next door; that he kept the money he had taken but gave the wallet to the police; and that two days later he took the police to where he had hidden the gun, but it was not there.

On cross-examination, after admitting that he expected leniency from prosecution for testifying against defendant, he said that he, Clark, Cannon, Terrell, Fleming, and deceased were all involved in the robbery; that defendant told him Vincent Moore would have marijuana and about $1,000; and that when the police first questioned him about the incident, he said he did not have anything to do with it and knew nothing about a gun.

An assistant pastor who had known defendant's family for 16 years testified that defendant had a reputation in the community as a peaceful and law-abiding citizen.

Defendant testified that he had been to the game room and then went to a bowling alley that night, but was on his way to his girl friend's house and as he approached Merrill Park he met Eric Moore, Gatewood, and Green; that when he entered the park he saw Terrell's car and another vehicle parked there; that Terrell was his sister's fiance and, as he approached the passenger side of Terrell's Buick, he saw deceased get out of the car and when he inquired about Terrell, deceased told him to "get the f——— away from there"; that when he asked what was happening, deceased pulled out a gun, pointed it at him, and mumbled something about giving him some money; that he smelled alcohol on deceased's breath, and he appeared to be high; that he knew deceased had been previously charged with armed robbery

involving a shooting; that during a struggle with him the gun went off, and he ran from the scene; and that he did not have a gun and had not been part of any armed robbery plan.

Approximately one week after the start of trial, the State tendered to defense counsel statements from Gatewood and Eric Moore, and defendant moved to have the witnesses excluded on grounds that he was prejudiced due to the State's failure to comply with rules of discovery. The court, in denying the motion, granted defendant a two-day continuance for further trial preparation. Later, the court allowed the State leave to amend its list of witnesses to also include Green.

OPINION

Defendant first contends that the trial court erred in denying his motion for substitution of judges without a hearing. Section 114—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—5(a)) provides that after a case involving only one defendant is placed with a trial judge, the defendant may move for a substitution of that judge "on the ground that such judge *** [is] so prejudiced against him that he cannot receive a fair trial." Section 114—5(c) provides that a defendant may also "move at any time for substitution of judge for cause, supported by affidavit" and that "the court shall conduct a hearing and determine the merits of the motion." Ill. Rev. Stat. 1977, ch. 38, par. 114—5(c).

Defendant filed two motions for substitution of judges—the first under subsection (a), which was granted; the second, filed after the case was reassigned to Judge Palmer, which was denied without a hearing.

Defendant admits in his brief that he was entitled to only one automatic substitution of judges under subsection (a) (see *In re Stiff* (1975), 32 Ill. App. 3d 971, 336 N.E.2d 619) and, since his second motion specifically states that it also was brought under subsection (a), it appears to have been properly denied by the trial court. Defendant nevertheless suggests that the allegations in the second motion were such as to require a hearing provided for in subsection (c). We disagree.

■■ Under subsection (c) a defendant must show cause supported by affidavit (see *People v. Covington* (1981), 92 Ill. App. 3d 598, 416 N.E.2d 61; *People v. Evans* (1979), 75 Ill. App. 3d 949, 394 N.E.2d 710), and it is clear that the second motion of defendant here makes only the conclusionary statement, unsupported by affidavit, that Judge Palmer and one other judge were prejudiced against him. Accordingly, we find no error in the denial of defendant's second motion

for substitution.

Defendant also asserts he was denied a fair trial because the court permitted the State to add, during trial, the name of a codefendant to its list of witnesses and because the State failed to produce the statements of two of its witnesses until after the trial commenced. Defendant argues that the court should have excluded testimony from those witnesses.

■ It is within the discretion of the trial court to permit an unlisted witness to testify where the State has not fully complied with pretrial discovery requests, and absent a showing of surprise of prejudice, the court's determination to admit the testimony is not error. *People v.Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459; *People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 402 N.E.2d 677.

In the instant case, eight days after the trial commenced the State was permitted to amend its witness list to include Green, who was originally listed in the caption as a codefendant but whose case had been severed. It appears that defendant was aware from the first day of trial that the State intended to call Green as a rebuttal witness and that his statement had been delivered to defendant. Thereafter, the State moved to amend its list of witnesses to include Green when it learned that one of its witnesses would not be testifying to what he had previously told the State. Following an objection to the inclusion of Green's name, defendant's counsel was asked by the court how much time would be needed to talk with the witness and for further trial preparation—to which counsel replied, "Judge, I don't think I need that much time to prepare to cross-examine this witness." The court then granted a one-day continuance and arranged for him to interview Green the following day.

■ Defendant's allegations of surprise and prejudice are based solely upon the need to replan his defense, but it is our belief that the court's actions were sufficient to overcome any surprise or prejudice. Defendant was asked by the court how much time he needed for further preparation, and defendant does not argue here that the one-day continuance was insufficient to conduct any additional investigation believed necessary. Moreover, not only was no request made for more time by defendant, but the trial court also arranged for an interview with Green. In the light thereof, the trial court did not err either in allowing the State to add Green to its list of witnesses or in permitting his testimony.

■ Neither was there prejudicial error in the court's refusal to exclude the testimony of Gatewood and Eric Moore because their statements were not produced by the State until after the trial com-

352

menced. In its answer to discovery, the State listed both as potential witnesses, indicating that their written statements were available for copying. On the first day of trial, defense counsel asked whether there was any additional discovery material, to which the State replied negatively. At that time, however, it appears that the State intended to call Moore as a rebuttal witness and not to call Gatewood, but a few days later the State decided to call both after learning that one of its key witnesses who arrived from out-of-town no longer could recall any details of the occurrence.The State then handed defense counsel copies of the statements of Gatewood and Eric Moore, and the court granted a one-day continuance to permit defense counsel to interview them with no additional time requested by him. Under the circumstances, we see no prejudice to defendant in admitting the testimony of those witnesses.

■■ ■ We next consider whether the court erred in failing to instruct the jury *sua sponte* on voluntary manslaughter. It is a well accepted principle that in a murder prosecution where there is evidence which would permit the jury to find the defendant guilty of manslaughter, the failure to give an instruction thereon, if tendered, is reversible error. (*People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373.) However, a party may not raise on appeal the failure to give an instruction unless he tenders it at trial (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027), and an issue not raised in a post-trial motion is waived for appellate review (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6).

■ Defendant refers us to no case holding that a trial court in a murder prosecution should instruct *sua sponte* on the lesser included offense of voluntary manslaughter. The cases principally relied upon by him do not support hiss position in this regard. in *People v. Pernell* (1979), 72 Ill. App. 3d 664, 391 N.E.2d 85, this court invoked an exception to the waiver doctrine, holding that in certain circumstances where self-defense is raised in a murder case and no instruction is tendered thereon, the court must give the appropriate instruction on self-defense. In the case before us, the jury was instructed on self-defense. In *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378, a voluntary manslaughter instruction was tendered and refused with the court finding that because the claim of self-defense had support in the evidence, the tendered instruction should have been given. Here, no instruction on voluntary manslaughter was tendered, and since the omission thereof was not raised in defendant's post-trial motion, any error in the failure to give it is waived. See *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.

■ Moreover, it is our view that the proof did not support a voluntary manslaughter instruction. Section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—2) provides in pertinent part that a person commits voluntary manslaughter where (a) he kills without lawful justification if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or (b) he intentionally or knowingly kills an individual if at the time of the killing he believes the circumstances would justify or exonerate the killing, but his belief is unreasonable.

Here, there was no evidence to support a voluntary manslaughter instruction under either (a) or (b). The State presented testimony that defendant opened the car door, leaned in, and without saying anything shot deceased. It was defendant's testimony that as he approached the car, deceased jumped out and, while he struggled with him over the gun, it discharged. It was thus his position that he was acting in self-defense when the gun accidentally discharged.

We turn then to the contention of defendant that "in the absence of any evidence that the killing *** was committed in furtherance of an armed robbery, it was improper for the court to instruct the jury as to the felony murder."

At the close of the State's case, the court directed an acquittal on a count charging defendant with the armed robbery of deceased. At that time, the State agreed that there was no evidence to support that charge. Thereafter, at the close of all the evidence, the court—over objection—included instructions as to felony murder with the underlying offense of armed robbery,[2] and defendant maintains that "the State offered no evidence to establish that deceased was killed as part of an armed robbery, or that the shooting was done in furtherance of an attempt to complete an armed robbery." We disagree.

■ It is established that a reviewing court does not weigh the evidence in determining whether an instruction was proper on a certain theory and that slight evidence thereon will justify the giving of an instruction. *People v. Kalpak* (1957), 10 Ill. 2d 411, 140 N.E.2d 726; *People v. Walters* (1979), 69 Ill. App. 3d 906, 387 N.E.2d 1230.

In the case before us, Eric Moore testified that on the night in question he, Gatewood, and Green had guns but that he gave his to defendant, who had asked to borrow it for use in a robbery. Moore, Gatewood, and Green all stated that they went to the park with

---

[2]Illinois Pattern Jury Instruction, Criminal, No. 7.01 (1968) (hereinafter IPI) 7.01 with "forcible felony" inserted in subsection 4, IPI Criminal 7.02 with "armed robbery" inserted in subsection 4, and IPI Criminal 14.01 defining armed robbery.

defendant for the purpose of robbing Vincent Moore; that defendant had told Green that Vincent Moore had marijuana and $1,000; that the four of them approached the two parked cars from the rear; that Green went to the driver's side of the Grand Prix where Vincent Moore was seated; that Gatewood and Eric Moore walked between the cars; and that defendant approached the passenger side of the Buick. Gatewood testified also that he had pointed his gun at the passenger in the Grand Prix, told him to roll down the window, and then heard a gunshot. Green testified also that he heard the shot but he nevertheless took $150 from Vincent Moore.

While defendant states that he did not intend nor have anything to do with the plan to rob Vincent Moore, considering the testimony of the other witnesses the jury might have believed that he was a participant and that he had approached the Buick to make certain that there would be no interference with the robbery of Vincent Moore. In any event, we believe that the evidence as set forth above was sufficient to justify giving the instruction as to felony murder.

Defendant additionally argues that the felony murder theory does not apply to a situation where the victim is one of the participants in the forcible felony. In support of this position, he cites *People v. Morris* (1971), 1 Ill. App. 3d 566, 274 N.E.2d 898, which we find not to be controlling. In *Morris*, it was held that since a co-felon was justifiably killed by an innocent party during the commission of an armed robbery, the felony murder theory did not apply to the surviving co-felon—the court's rationale being that the death of the co-felon occurred during a struggle with an innocent third party, which was not an action done in furtherance of the armed robbery. Here, unlike *Morris*, the record does not permit a finding that defendant's actions were justifiable or that he was an innocent party to the armed robbery of Vincent Moore.

Defendant finally contends that he was not proved guilty beyond a reasonable doubt, arguing essentially that the testimony of the State's witnesses was suspect, that there was no credible evidence contradicting his self-defense testimony, and that there was no physical evidence in conflict with his version of the shooting. It is the jury's function to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn therefrom, and the jury's determination of guilt will not be disturbed on review unless the evidence is so improbable as to raise a reasonable doubt thereof. (*People v. Cepolski* (1979), 79 Ill. App. 3d 230, 398 N.E.2d 351.) Although an accused presents evidence to the contrary, the testimony of a single witness, if positive and credible, is sufficient to sup-

port a conviction (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.), and a witness' use of drugs at the time of the incident does not, in itself, require that the witness' testimony be rejected (*People v. Cepolski* (1979), 79 Ill. App. 3d 230, 398 N.E.2d 351). It is true, however, that where the defendant raises the affirmative defense of self-defense, the State must prove beyond a reasonable doubt—in addition to the elements of the offense—that the defendant did not act in self-defense. *People v. Warren* (1965), 33 Ill. 2d 168, 210 N.E.2d 507; *People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044; *People v. Liddell* (1975), 32 Ill. App. 3d 828, 336 N.E.2d 815.

In the instant case, Leroy Fleming, an eyewitness to the shooting, testified that he was sitting in the back seat of the car behind deceased when defendant, whom he had known for several years, approached from the rear of the car, leaned in and shot deceased in the head with a revolver, and that no words had been exchanged between deceased and defendant. His testimony that deceased was still in the car at the time of the shooting was corroborated by Officer Barrett, who testified that when she arrived deceased was unconscious on the passenger side of the front seat with a bullet in his forehead, and by Gatewood and Eric Moore, who testified that after he was shot deceased was lying partly in and partly out of the car.

Defendant's testimony differs from that of the State's witnesses. While he admitted being in the game room with Eric Moore, Gatewood, and Green, he said that he left there, went to a bowling alley for a short time, and was on his way to his girl friend's house when he saw those three persons as he entered the park; that they were walking behind him at the time, and that after he entered he saw Terrell's Buick; that he had to walk a block in the park to reach the Buick and, as he approached it from the passenger side, the deceased got out; that when he made inquiry concerning Terrell, deceased told him to leave and then pulled out a gun; that during a struggle over the gun, it went off with the bullet striking deceased in the head. While defendant denied having a gun and denied any involvement in any robbery plan, Eric Moore said defendant had borrowed his gun that day to use in a robbery and he, Gatewood, and Green testified that defendant went with them to rob Vincent Moore.

■ It is our belief, therefore, that the evidence is not so improbable as to raise a reasonable doubt as to defendant's guilt. Although Leroy Fleming was the only eyewitness to the shooting, there is corroboration of his testimony that defendant was shot in the car, rather than during a struggle outside the car as stated by defendant, and it

is our view the evidence supports the conviction notwithstanding the contradictory testimony of defendant. While Fleming might have been high on alcohol and marijuana at the time of the shooting, his testimony need not be rejected solely on that basis—particularly in light of the fact that aspects of his testimony were corroborated to some extent by Eric Moore,Gatewood, Green, and Officer Barrett.

Moreover, we also believe the evidence as outlined above was such that the jury could have concluded that the defendant was the aggressor rather than acting in self-defense. (See *People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044; *People v. Liddell* (1975), 32 Ill. App. 3d 828, 336 N.E.2d 815.) Finally, while defendant argues that because there was no physical evidence conflicting with his version of the shooting since no blood was found in the Buick, and because Officer Corless did not know whether Leroy Fleming's clothes were wet although he said he was lying in the snow for some time, we note that Officer Manella stated that he did not remember whether there was any blood in the Buick and that the Buick appeared to have been recently cleaned, and that Officer Corless stated he did not recall the appearance of Fleming's clothing.

Accordingly, the judgment appealed from is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.