(No. 34091.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AUGUSTINE PORTER, Plaintiff in Error.

*Opinion filed May 23, 1957.*

CARL T. ROBINSON, and HUNTER, WILSON & GARNETT, both of Chicago, (EDMOND RAGEN, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This cause was heard upon a writ of error to the criminal court of Cook County to review a judgment entered on a jury verdict finding defendant, Augustine Porter, guilty of murder and imposing a 50-year penitentiary sentence. Whether or not the evidence adduced by the prosecution was sufficient to sustain a guilty verdict, alleged errors in the admission of evidence, and the propriety of the trial court in giving and refusing certain instructions are the only issues presented for our determination. It is claimed by defendant that the unquestioned circumstances surrounding the killing establish a homicide that was excusable in that it stemmed from misadventure.

The alleged murder with which defendant is charged occurred on January 1, 1948. According to defendant's testimony, it appears that Maggie Pry, the deceased, and defendant had lived together for over a year as common-law man and wife, during which time he paid her about $20 a week. This illicit cohabitation discontinued in September, 1947, for it was at that time that the landlady ordered defendant from the premises. Defendant claims

Maggie Pry had telephoned him at 3:00 P.M. on January 1, 1948, to call for some of his clothes. At about 4:35 P.M. defendant was admitted to the building by one of the tenants, when he rang the doorbell to the outside entrance of the basement, and he went to Maggie Pry's apartment.

Defendant knocked on the door of the apartment several times, and she asked, "Who is it?" When he replied, "It is Porter," she said, "Wait a minute." He waited 20 minutes and knocked again, whereupon, according to defendant's testimony, Maggie Pry called out, "He won't let me open the door. You push the door. It's not locked." He pushed the door and tore it from the facing, and entered the apartment, which consisted of an 8' x 10' room in which there was a bed, refrigerator, stove, table, chest and chair. J. C. Cook, a witness, was seated beside Maggie Pry on the bed. They both jumped up, and Maggie Pry said, "Don't start nothing." Defendant claims he said, "I am coming for my things," and the man said, "I'll take care of this," and started toward him with his hand in his pocket. Whereupon defendant pulled out his pocket knife, which was open in his pocket, and, as he struck at the man, Maggie Pry ran between them and was stabbed.

Defendant further testified that he did not intend to stab her; that she told him to get out before he got hurt; that a neighbor, L. C. April, told him that Cook had a gun; and he fled from the building. Defendant claimed he was frightened and went to a movie, where he remained until about 8 P.M. When he arrived home, his mother told him the police had been there, and asked what had happened. He gave her this same account, and she informed him for the first time that Maggie Pry was dead. He then called the police, and made a statement at the station, which was taken down on a typewriter by one of the officers on duty.

Defendant's testimony, however, was impeached by his original voluntary statement to the police. He made no

reference to Maggie Pry's telephoning him to come over, and said that when he originally knocked on the door and identified himself, Maggie Pry asked, "What do you want?" When he told her he wanted his underwear, she told him he could not have it. He also stated that he had his knife open when he forced open the door and broke the facing; that Cook and Maggie Pry both jumped up from the bed; that Maggie Pry said, "Now don't start nothing," and caught the thrust of the knife intended for Cook. Maggie Pry then screamed for L. C. April, who told defendant that Cook had a gun. Defendant made no reference to Cook having his hand in his pocket when defendant entered the room.

Louis April, a neighbor of the deceased, testified for the State that he had seen deceased earlier in the day on January 1, 1948; that he heard defendant knock on the door of Maggie Pry's apartment; that he heard Maggie Pry say, "Who is it? Wait a minute"; that he looked out in the hall and saw Porter there; that Porter knocked 20 minutes later, and Maggie called out, "You can't come in now"; that he heard the crashing of the door, which was followed some seconds later by a scream, "L. C., Porter stabbed me." Maggie Pry then came to his room, bleeding from the chest, and then staggered down the hall to the telephone, where she collapsed. She lay in the hallway until the police officer came and took her to the hospital, where she was pronounced dead. The witness further testified that he did not see Porter either enter or leave the apartment, but saw Cook in the hallway after the stabbing.

The landlady testified that the door was torn from its facing when she arrived at the apartment at 5 P.M. The tenant who admitted Porter to the building testified accordingly, and another neighbor testified to hearing the crash of the door and the scream, but she did not pay too much attention or leave her apartment because Maggie Pry and

Porter often fought. When she heard the noise in the hall, she walked out to find Maggie Pry stretched out on the floor, with blood running down her side.

J. C. Cook denied being in the apartment at the time Porter pushed open the door. He testified that he had come to Maggie's apartment looking for his sister, who had formerly been Maggie's roommate; that as he entered into the hallway he saw Porter standing at Maggie's door with a knife in his hand; and later, while he was still in the hall, he heard Maggie cry out, "Porter stabbed me." He testified further that he called the police after Maggie fell in the hallway near the telephone. He did not, however, give a statement to the police until several days later. Nor did he testify at the inquest.

Several witnesses testified to defendant's good character and reputation as a law-abiding citizen.

The officer who took down defendant's statement with reference to the homicide testified that defendant did not tell him that Maggie had telephoned asking him to come over; nor that she said, "The gentlemen will not let me open the door. It's not locked. Push it open"; nor that J. C. Cook attempted to assault him, or had his hand in his pocket when defendant entered the room; nor that Maggie Pry said, "Porter, you'd better get out." The officer admitted that he had testified from his recollection, at the coroner's inquest, as to a struggle between defendant, Cook, and the deceased, but that defendant had never told him of any fights, or blows, or assaults from Cook.

On the basis of substantially the foregoing evidence, defendant's motion for a directed verdict was overruled. The court gave some 28 instructions on behalf of the State, and some 9 instructions on behalf of defendant. The jury found defendant guilty of murder as charged, and fixed his punishment at imprisonment in the penitentiary for 50 years.

Defendant evidently argues that the homicide was ex-

cusable on the grounds of self-defense and misadventure.

Defendant's conduct could not be deemed homicide by misadventure, as defined in the Criminal Code. Section 152 of the Criminal Code (Ill. Rev. Stat. 1955, chap. 38, par. 370,) provides: "Excusable homicide, by misadventure, is when a person in doing a lawful act, without any intention of killing, yet unfortunately kills another person, * * *."

The Code also provides in section 145 (Ill. Rev. Stat. 1955, chap. 38, par. 363): "Provided, always, that where such involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder."

From the defendant's own testimony, he was in the act of stabbing J. C. Cook when he killed Maggie Pry. The defendant fails to argue here nor did he assign as error the refusal of the trial court to give a tendered instruction covering homicide by misadventure. Much to the advantage of the defendant several instructions were given covering the ingredients of manslaughter. Also the jury was tendered a manslaughter form of verdict. The jury did not subscribe to the theories underlying the lesser offense.

Defendant further contends that the evidence does not establish the guilt of defendant beyond a reasonable doubt. We find no fault with defendant's statement of the law that in reviewing a conviction, the court of review should give a careful, independent consideration to the evidence, giving due weight to the fact that the court or jury saw and heard the witnesses, and if after such consideration the court does not regard the evidence in the record, by reason of improbability, unreasonableness or its unsatisfactory character, as sufficient to remove all reasonable doubt and create an abiding conviction that the defendant is guilty, it is the duty of the court to reverse the judgment. *People* v. *Nemes*, 347 Ill. 268.

In reviewing the evidence herein, it appears that although defendant and deceased had not been living together as common-law man and wife since September, 1947, defendant did go to her apartment on January 1, 1948, and that he did tear the door from its facing after waiting outside in the hall for some 20 minutes. This conduct seems inconsistent with his testimony that deceased called him to pick up his clothes, and with his original statement that she asked him what he wanted when he first knocked and identified himself. Nor did he tell the police originally that deceased told him to push open the door, that it was not locked. Moreover, even if such a request were made, it would not warrant tearing the door from its facing, as defendant did. His conduct tends to corroborate the testimony of the neighbor, April, who heard deceased say, "You can't come in," rather than defendant's explanation of his visit.

The evidence is controverted as to whether Cook was already in deceased's room. However, even if Cook's testimony is completely disregarded, and it be assumed that Cook was in the room, sitting on the bed or sofa with deceased, that in itself does not constitute justification for defendant's conduct. From his own testimony, defendant's knife was open in his pocket when he forced open the door, and he had no knowledge at that time that Cook had a gun, or any weapon. Whatever apprehension defendant had at the time of the stabbing was engendered, according to his own testimony, because Cook had his hand in his pocket. Defendant, however, made no such reference in his original statement to the police. Nor is there any claim that deceased had called upon defendant to protect her or that Cook assaulted defendant. All Maggie said to Porter was, "Now don't start nothing," when he entered the room and pulled out his knife. She then grabbed him, and he claims he stabbed her while trying to cut up Cook.

Under these circumstances, it was an issue for the jury

as to whether defendant's action was in self-defense. The jury's apparent rejection of that defense and their verdict of guilty is not based upon improbable, unreasonable, or unsatisfactory evidence, as in the cases cited by defendant in support of the general proposition that verdicts of conviction may be reversed. (*People* v. *Nemes,* 347 Ill. 268; *People* v. *Oberlin,* 355 Ill. 317.) The verdict reflects the jury's evaluation of the reasonableness of defendant's conduct and his apprehension of danger, if any, on the basis of evidence consisting substantially of his own testimony. Although defendant's subsequent conduct in calling the police and making a voluntary statement was forthright and proper, it does not render the stabbing of deceased justifiable or any less a crime.

Defendant also urges that the original statement to the police was improperly admitted for impeachment purposes. However, there is no claim that the statement was not voluntarily made; nor was it rejected in any preliminary hearing; nor was there even a request for a preliminary hearing on its admissibility, as in the cases cited by defendant where such statements were deemed improper impeachment. (*People* v. *Sweeney,* 304 Ill. 502; *People* v. *Maggio,* 324 Ill. 516.) Consequently, the inclusion of this evidence was not error.

It appears that defendant further contends that certain instructions were prejudicial and misleading, on the ground that they omitted any reference to self-defense. It is neither necessary nor possible that each instruction state all the law of the case, or that the element of self-defense be included in defining all of the various legal concepts upon which the jury must be instructed in a case of alleged murder. The criterion is whether the instructions, considered as a whole, fully state the law relating to the respective theories of the defendant and the prosecution. (*People* v. *Kelly,* 8 Ill.2d 604.) Inasmuch as the record shows that at least six instructions were given on the sub-

ject of self-defense, the cause should not be reversed on the ground that all instructions did not cover this element of self-defense.

Defendant also assigns as error the statement of the State's Attorney in his concluding remarks, "This 23-year-old man is a savage." Although wide latitude in closing arguments is allowed, and it is not uncommon for a prosecuting attorney to denounce a defendant, and even indulge in invective predicated upon the State's interpretation of the evidence, nevertheless, this remark does skirt the bounds of propriety. However, in the light of all the facts and circumstances, it cannot, by itself, be deemed to constitute reversible error.

It is our opinion, therefore, that the judgment of the criminal court entered on the jury verdict should be affirmed.

*Judgment affirmed.*