THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT GRAHAM, Defendant-Appellant.

First District (3rd Division)   No. 79—422

Opinion filed April 17, 1985.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial, the defendant, Robert Graham, was convicted of murder, attempted murder and armed robbery, and received concurrent sentences of 40 to 80 years, 30 to 60 years and 15 to 30 years, respectively. On appeal, the defendant contends that (1) his murder conviction must be reversed because the felony-murder rule was inapplicable where the deceased was a participant in the forcible felony; (2) the trial court erred in instructing the jury that the defendant could be found guilty of murder under a theory of accountability for Officer Patrick White's conduct; (3) the trial court erroneously gave instructions which permitted the jury to find the defendant guilty of attempted murder without finding specific intent to kill; (4)

the trial court improperly admitted hearsay evidence; (5) prosecutorial remarks in opening and closing statements and during trial were improper; and (6) imposition of the sentences defendant received was an abuse of the trial court's discretion.

Officer White of the Chicago police department testified that at about 11:45 p.m. on August 13, 1974, while off duty, he went to the Jewel Food Store at 2323 West 111th Street, Chicago. Officer White was carrying a Colt .45 revolver and a Smith .357 revolver. In the parking lot, he met Patrick Murray, an acquaintance employed at the store. The two men were followed into the store by the defendant, Rodney Hewitt and Joe Larry Nicholson. The defendant walked to the customer service counter, Hewitt moved to the window and Nicholson went to the express checkout lane. Partially covering his face with a yellow bandana, the defendant drew a gun and announced a holdup. Hewitt and Nicholson also drew guns. The defendant demanded money from the woman working behind the service counter. Officer White pulled out his police star and .45 revolver, announced that he was a police officer and ordered the men to freeze. Nicholson shot once at the night manager and opened fire on Officer White. Hewitt and the defendant, whose scarf had fallen down, also began to shoot at the policeman. Officer White returned the gunfire. Nicholson ran toward the door, followed by Hewitt and the defendant. Nicholson fell just outside the door. Hewitt and the defendant tripped over Nicholson, regained their footing and ran on. Officer White pursued them, reaching the door. Just before the defendant rounded the corner of the building, he turned and shot at Officer White. Officer White fired back. The defendant fell around the corner as if he had been shot. Officer White noticed a gun in the hand of Nicholson, who was wounded and still on the ground, and another gun next to him. The policeman kicked the revolver out of Nicholson's hand. As he chased Hewitt and the defendant, he observed a green 1972 Plymouth in the parking lot with no one in it. Hewitt and the defendant jumped over a wooden fence adjacent to the lot. Officer White returned to the store. Shortly thereafter, he observed that the Plymouth was gone, and he discovered a bloodstained paper bag by the fence.

Later that night, Officer White turned in his guns at the Area 2 police station for a ballistics check. He identified two photographs of the defendant. On September 26, 1974, Officer White identified the defendant in a lineup.

Patrick Murray testified that on August 13, 1974, he was employed by the Jewel Food Store at 2323 West 111th Street, Chicago. At 11:45 p.m. on that day, he encountered Officer White in the store

parking lot as he arrived to pick up a paycheck. He described the robbery, corroborating Officer White's testimony. On September 26, 1974, Murray identified the defendant in a lineup.

Millicent Speck testified that on August 13, 1974, she was working at the customer service desk of the Jewel Food Store at 2323 West 111th Street, Chicago. As she wrapped money in bands marked with the store's name and address, she wrote her name and the amount on the bands. A man pointed a gun at her, announced a holdup and demanded money from the safe. Speck handed over three bands of money. When he asked for a paper bag, she told him to get one from the register. Then she heard a shot. She lay on the floor while more shots sounded, and got up when she heard familiar voices. Subsequently, Speck was taken to a police station, where she identified two money bands with her handwriting and the store's name and address.

Dr. Eupil Choi testified that Joe Larry Nicholson died of a bullet wound to the head.

Sergeant Donald Smith, a Chicago police department firearms expert, testified that the bullet and bullet fragment removed from Nicholson's body were .32 caliber and could only have been fired from a .32 caliber pistol. In connection with this case, he examined four guns: a J. C. Higgins .22 caliber pistol and a .25 caliber pistol, both recovered from the vicinity of Nicholson's body, and Officer White's Colt .45 revolver and .357 magnum revolver.

Sergeant Franklin Smith testified that at about 1:30 a.m. on August 14, 1974, he was working as a homicide investigator for the Chicago police department. He went to Provident Hospital to interview the defendant, who had been admitted with a gunshot wound to the abdomen. Sergeant Smith was following routine police procedure. He had no knowledge of the robbery. The defendant stated that he had been shot accidentally by John Lester while they were playing with a gun; that Ronald Waites had brought him to the hospital, and that he did not wish to press charges. About an hour later, Sergeant Smith heard a radio message regarding a man possibly shot in connection with the Jewel robbery. He informed police authorities of his interview with the defendant. The defendant was arrested at about 3 a.m.

Officer Thomas Boyd of the Chicago police department testified that after speaking with an informant, he and several officers headed toward a house at 115th Street and Vincennes Avenue in search of Orville McReynolds. At 112th Street, they stopped an automobile driven by Ronald Waites. Money protruded from the pants zipper of his passenger, Vernita Graham. Upon her refusal to remove the

money, Officer Boyd took it. The money was wrapped in a band marked with the name and address of the Jewel store at 2323 West 111th Street. Officer Carolyn Basile of the Chicago police department searched Vernita Graham, recovering more banded money.

An examination of the house on 115th Street, where Waites lived, proved fruitless. The police proceeded to a house at 17134 Watkins Street. There, they found several items of clothing and a wallet that were blood-soaked. The wallet contained numerous pieces of identification bearing the name "Orville McReynolds." Tests revealed that the blood on these items and on the paper bag was type B, the defendant's blood type.

The jury returned guilty verdicts of murder, attempted murder and voluntary manslaughter against the defendant. The trial court sentenced the defendant to 40 to 80 years, 30 to 60 years and 15 to 30 years, respectively. The sentences were ordered to run concurrently. The defendant appeals.

The defendant contends that he cannot be convicted of murder in the death of his cofelon, Nicholson, under the felony-murder doctrine. Section 9—1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(3)) provides that a person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death, he is attempting or committing a forcible felony other than voluntary manslaughter. Committee comments add that it is immaterial whether the killing is intentional or accidental, or is committed by a confederate without the connivance of the defendant, or even by a third person trying to prevent the commission of the felony. (Ill. Ann. Stat., ch. 38, par. 9—1(a)(3), Committee Comments, at 16 (Smith-Hurd 1979).) Where several persons conspire to do an unlawful act and another crime is committed in the pursuit of the common object, all are alike guilty of the crime committed if it is a natural and probable consequence of the execution of the conspiracy. (*People v. Payne* (1935), 359 Ill. 246, 194 N.E. 539.) A felon is responsible for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts. *People v. Brown* (1979), 70 Ill. App. 3d 922, 388 N.E.2d 1253.

In support of his contention, the defendant relies upon *People v. Morris* (1971), 1 Ill. App. 3d 566, 274 N.E.2d 898. In *Morris*, the defendant's cofelon was justifiably killed by an innocent third party trying to prevent a forcible felony. The felony-murder doctrine was found inapplicable, and the defendant's murder conviction was reversed, because the killing was not an act done in furtherance of the common design to commit a forcible felony. The defendant in the in-

stant case urges us to similarly hold that he is not responsible for his cofelon's death under the felony-murder rule. However, the instant facts are distinguishable from those in *Morris*. The evidence indicates that Nicholson was shot by the defendant or Hewitt as they fired at Officer White during their escape. The period of time involved in an escape with immediate pursuit after committing a crime is part of the crime itself. (*People v. Hickman* (1973), 12 Ill. App. 3d 412, 297 N.E.2d 582; see *People v. Golson* (1965), 32 Ill. 2d 398, 207 N.E.2d 68.) Under these circumstances, the killing was an act done in furtherance of the common design to commit a forcible felony.

Our research reveals only one Illinois case where a reviewing court considered the question whether the felony-murder rule applies when one cofelon kills a cofelon during the commission of a forcible felony. In *People v. Rice* (1982), 108 Ill. App. 3d 344, 438 N.E.2d 1333, the defendant was convicted of murder after he shot and killed his cofelon during their attempted armed robbery of Vincent Moore. On appeal, the defendant challenged the felony-murder instruction given to the jury, relying on *Morris* to argue that felony-murder did not apply where the victim was a participant in the forcible felony. In *People v. Rice* the court refuted this argument, distinguishing *Morris*:

> "In *Morris*, it was held that since a co-felon was justifiably killed by an innocent party during the commission of an armed robbery, the felony murder theory did not apply to the surviving co-felon—the court's rationale being that the death of the co-felon occurred during a struggle with an innocent third party, which was not an action done in furtherance of the armed robbery. Here, unlike *Morris*, the record does not permit a finding that defendant's actions were justifiable or that he was an innocent party to the armed robbery of Vincent Moore." (108 Ill. App. 3d 344, 354.)

The defendant's conviction was affirmed.

*Hickman* applied the felony-murder doctrine to find the fleeing perpetrators of a forcible felony guilty of murder when a pursuing detective was mistakenly shot and killed by a police officer also in pursuit of the felons. The defendant attempts to distinguish *Hickman* from the instant case on the basis of the innocence of the deceased; in contrast, the defendant points out, Nicholson was a participant in the robbery. Such a distinction, however, is insufficient to preclude the application of the felony-murder doctrine to the case at bar. The legislative intent behind felony-murder was to deter persons from committing forcible felonies by holding them responsible for murder if death results. (*People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903.) We

believe that purpose would be thwarted if we accepted the defendant's position.

■ The defendant emphasizes that *Hickman's* progeny attributes to it a two-pronged test for felony-murder: (1) evidence that shows the defendant was a participant in a forcible felony and (2) evidence that shows an innocent party was killed during the commission of the felony as a direct and foreseeable consequence of it. (*People v. Burke* (1980), 85 Ill. App. 3d 939, 407 N.E.2d 728; *People v. Brown* (1979), 70 Ill. App. 3d 922, 388 N.E.2d 1253.) Our examination of *Hickman* reveals no indication of an intent to render the felony-murder rule inapplicable where the deceased was not an innocent party to the forcible felony. Indeed, *Hickman* focused on the character of the killer, not the victim. Moreover, the felony-murder statute addresses the killing of "an individual" during a forcible felony; the language does not distinguish between victims who are innocent and victims who are cofelons. In keeping with its purpose, we find the guilt or innocence of the deceased irrelevant to the felony-murder doctrine. The defendant was properly convicted of murder in the death of Nicholson under the felony-murder rule.

■ The defendant argues that the trial court improperly instructed the jury on murder based on accountability for Officer White's conduct. The instruction complained of is People's Instruction No. 13, which provided as follows:

"A person who is attempting to commit or is committing an Armed Robbery is responsible for the consequences of the conduct of any person who is attempting to prevent the commission of the Armed Robbery." Illinois Pattern Jury Instruction (IPI), Criminal, No. 5.03, modified (2d ed. 1978); People's Instruction No. 13.)

The trial court explained that it was giving this instruction based on *Hickman*, where the defendant was held responsible for the consequence of the conduct of a police officer attempting to prevent the commission of burglary. The instruction properly articulated the applicable law to the jury.

The defendant alleges that, under *Brown*, he cannot be held accountable for Officer White's conduct because they did not enter into a common plan. The defendant in *Brown* advanced a similar argument, maintaining that his culpability for his cofelon's acts depended on proof of a common plan or design between the two to commit armed robbery. This court rejected this theory, noting that Illinois law imposes criminal liability on a felon not only when the death-causing act is done by a confederate in furtherance of the felony, but also

when the death occurs during the felony as a foreseeable consequence of his initial criminal acts. A common plan between the felon and the one whose act killed the victim is not a requirement under the felony-murder rule. The trial court properly instructed the jury on murder based on accountability for Officer White's conduct.

■ The defendant further asserts that the instructions erroneously permitted the jury to find him guilty of attempted murder without finding specific intent to kill. At the close of the evidence, over the defendant's objection, the jury was instructed in pertinent part as follows:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill *** that individual; or he is attempting to commit or is committing the crime of Armed Robbery." IPI Criminal 2d No. 7.01; Peoples Instruction No. 15.

> "A person commits the crime of attempt [Murder] who, with the intent to commit the crime of Murder, does any act which constitutes a substantial step toward the commission of the crime of Murder.

> The crime attempted need not have been committed." IPI Criminal 2d No. 6.05; People's Instruction No. 17.

> "To sustain the charge of Attempt Murder, the State must prove the following propositions; [*sic*]

> *FIRST*: That the defendant, or one for whose conduct he is responsible, performed an act which constituted a substantial step toward the commission of the crime of Murder of Patrick White; and

> *SECOND*: That the defendant or one for whose conduct he is responsible, did so with the intent to commit the crime of Murder of Patrick White; and

> *THIRD*: That at the time the defendant or one for whose conduct he is responsible, performed this act he intended to kill Patrick White." IPI Criminal 2d No. 6.07; People's Instruction No. 18.

The offense of attempt requires an intent to commit a specific offense, while the distinctive characteristic of felony-murder is that it does not involve an intent to kill. (*People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903.) An instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown. (*People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.) An attempted murder instruction must limit the accompanying definition of murder to an act committed with an intent to kill. (*Peo-

*ple v. Lotts* (1978), 63 Ill. App. 3d 240, 380 N.E.2d 66.) In the instant case, People's Instruction No. 18 properly instructed the jury that a finding of intent to kill Patrick White was requisite to an attempted murder conviction.

Defendant's reliance on *Viser, Harris* and *Lotts* is misplaced. In each of those cases, the instruction on attempted murder authorized a conviction upon a finding of intent to commit murder; the accompanying murder instruction offered a definition of murder which was not limited to an intent to kill. Hence, the jury could have based its attempted murder conviction on a finding that the defendant acted with less than an intent to kill. As the offense of attempted murder requires a specific intent to kill (Ill. Rev. Stat. 1983, ch. 38, par. 8—4; *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903), these instructions were improper and compelled reversal. In the case at bar, while People's Instruction No. 17 on attempted murder requires only an intent to commit the crime of murder, People's Instruction No. 18 provides that to sustain the charge of attempted murder, the State must prove, *inter alia*, that the defendant intended to kill Officer White. Considering the instructions as a whole (*People v. Porter* (1957), 11 Ill. 2d 285, 143 N.E.2d 250; *People v. Camacho* (1979), 71 Ill. App. 3d 943, 389 N.E.2d 1213), they set out a correct statement of the law applicable to the attempted murder charge. The instructions did not permit the jury to find the defendant guilty of attempted murder without finding a specific intent to kill.

■ The defendant maintains that the trial court erred in allowing testimony as to an informer's information and as to the identity of Waites and Vernita Graham, because such testimony was hearsay evidence. Hearsay is in-court testimony concerning an out-of-court statement offered to prove the truth of the matter asserted therein. (*People v. Vanda* (1982), 111 Ill. App. 3d 551, 444 N.E.2d 609.) Pursuant to the defendant's motion *in limine* seeking to exclude such evidence, the trial court prohibited any State reference to statements of Vernita Graham, Waites or the informer.

The defendant complains that the State introduced testimony showing that the informer told the police that Orville McReynolds was one of the robbers. The record indicates that evidence was introduced showing that the informer was brought to the police station from the hospital, that he was questioned, and that, based on the information he gave, the police searched for Orville McReynolds. Such testimony was not hearsay evidence, as there was no out-of-court statement offered into evidence to prove the truth of the matter asserted therein.

The prosecutor, in closing argument, told the jury that the in-

former was brought to the police station to determine whether he knew anything about the robbery; that after speaking with him, the police looked for Hewitt and McReynolds; that after arresting Hewitt, they spoke to the informer "trying to find the location of Orville McReynolds"; and that several officers left the police station to search for McReynolds at Waites' home. At this time, defense counsel objected. The trial court sustained the objection and instructed the jury to disregard the last remark. The defendant urges on appeal that he suffered prejudice by the admission of this evidence. Again, no out-of-court statement was introduced or even discussed, so there is no basis for alleging that it was hearsay evidence. Furthermore, the trial court sustained defense counsel's sole objection to this portion of the argument and instructed the jury to disregard the comment. This would be sufficient to cure any error and to find that the jury was not unduly influenced or misled. (See *People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 452 N.E.2d 32; *People v. Davis* (1982), 104 Ill. App. 3d 1027, 433 N.E.2d 1011.) The trial court did not improperly admit hearsay evidence.

■ The defendant next contends that he was denied his right to a fair trial by improper prosecutorial remarks during opening and closing arguments and at trial. He asserts that the prosecutor's reference to Vernita Graham as the defendant's "girl friend" in opening statement, a fact which was not proved at trial, caused prejudice because it bolstered weak identifications of the defendant by Officer White and Murray. Although the relationship between the defendant and Vernita Graham should not have been mentioned without competent evidence thereof, improper comments do not result in the denial of a fair trial where they do not constitute a material factor in the defendant's conviction. *People v. Hoddenbach* (1983), 116 Ill. App. 3d 57, 452 N.E.2d 32; *People v. Miller* (1981), 101 Ill. App. 3d 55, 427 N.E.2d 987.

■ ■ The defendant complains that reference to Officers Boyd and Carone as Gang Crimes investigators during the State's opening and closing arguments suggested the defendant's involvement with other crimes. Since counsel for the defendant did not object to such mention, the issue is waived and not properly before this court. (*People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051.) The defendant argues that an equally prejudicial inference was suggested in opening and closing arguments when the prosecutor said that the Gang Crimes investigators knew that Hewitt, the defendant's cofelon, owned a green 1972 Plymouth. It is well established that informing the jury of the consequential steps in the investigation of a crime is

necessary and important to the full explanation of the State's case. *People v. Guyon* (1983), 117 Ill. App. 3d 522, 453 N.E.2d 849.

■ ■ The defendant claims that the prosecutor made comments that were not supported by the evidence, including reference to identification found in Vernita Graham's apartment for Orville McReynolds as well as for the defendant, Robert Graham. Objection to that comment was sustained, and the jury was told to disregard the comment, thus curing any error. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) The defendant also refers to a closing remark regarding Waites' participation in the lineup in which Officer White identified Hewitt. Since defense counsel did not object to the remark, the issue is waived. *People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051.

■ The defendant alleges that the prosecutor loudly suggested, while entering the courtroom, that the defense attorney received special treatment and questioned whether the judge was "on the take." While such comments in the presence of the jury would indeed be intolerable, the record does not indicate whether they were made or whether the jury heard them. The trial judge, who was preceding the assistant State's Attorney into the courtroom, said that he did not hear any such remarks. Under these circumstances, the alleged comments did not prejudice the defendant.

■ The defendant challenges a statement by the assistant State's Attorney in closing argument which advised that the State was prosecuting him because he was guilty. A prosecutor may not inject his personal opinion of a defendant's guilt (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295); however, error caused by the prosecutor's closing argument does not become reversible error unless there is substantial prejudice to the accused (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Guyon* (1983), 117 Ill. App. 3d 522, 453 N.E.2d 849). In light of the overwhelming evidence of the defendant's guilt, any such statement was harmless error.

■ ■ Finally, the defendant alleges that the trial court abused its discretion in sentencing him to 40 to 80 years for murder, 30 to 60 years for attempted murder and 15 to 30 years for armed robbery. While a reviewing court is empowered to reduce sentences (87 Ill. 2d R. 615(b)(4)), the imposition thereof rests within the discretion of the trial court, placed as it is in a superior position to weigh the factors which bear upon the sentence, and its determination will not be altered on review absent abuse of discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circum-

686

stances of each case. (*People v. Taylor* (1983), 115 Ill. App. 3d 621, 450 N.E.2d 1256.) Such judgment depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *People v. Taylor* (1983), 115 Ill. App. 3d 621, 450 N.E.2d 1256.

The defendant insists that the trial court unlawfully ignored his excellent potential for rehabilitation, as manifested by the fact that he worked, supported his children and avoided trouble during the three years preceding his conviction while out on bond. The defendant further maintains that under the circumstances—the only death was that of a co-felon who initiated the gunfire, and no innocent individual was hurt—the sentences were excessive. Before sentencing the defendant, the trial court indicated that it had considered a presentence investigation and was taking into account its knowledge of the defendant's background, the seriousness of the offenses and other relevant factors. The defendant made a statement and counsel for both sides argued in aggravation and mitigation. We cannot say that the trial court abused its discretion in sentencing the defendant.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.