THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY D. WILLIAMS, Defendant-Appellant.

Fifth District   No. 5—85—0801

Opinion filed August 5, 1987.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kathleen Alling, State's Attorney, of Mt. Vernon (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Jerry D. Williams, was convicted of cruelty to a child (Ill. Rev. Stat. 1985, ch. 23, par. 2368) and obstructing a peace officer (Ill. Rev. Stat. 1985, ch. 38, par. 31—1) after a jury trial in the circuit court of Jefferson County on October 22 and 23, 1985. Defendant was sentenced to imprisonment for concurrent terms of one year for cruelty to a child and six months for obstructing a peace officer, and he was ordered to pay $20 to the Violent Crime Victims Assistance Fund.

Defendant raises 10 issues on appeal. He contends that: (1) he was

not proved guilty beyond a reasonable doubt of cruelty to a child; (2) he was denied a fair trial by the admission of and repeated reference to hearsay statements and because of improper closing argument on the part of the prosecutor; (3) the trial court erred in denying his motion *in limine* to bar evidence of his 1975 aggravated battery conviction; (4) he was denied a fair trial by the trial court's refusal to instruct the jury on the issue of self-defense; (5) he was denied a fair trial by the exclusion of photographs of his injuries; (6) he was denied a fair trial by the giving of a non-Illinois Pattern Jury Instruction stating that the absence of certain witnesses should not be held against either the State or the defendant; (7) the trial court erred in refusing to give the second paragraph of the circumstantial evidence instruction; (8) he was denied the effective assistance of counsel at trial; (9) the trial court improperly relied on hearsay in sentencing him; and (10) he is entitled to credit against the $20 fine payable to the Violent Crime Victims Assistance Fund. We reverse both convictions and remand for a new trial.

At trial, the State elicited the following testimony from four witnesses. On July 26, 1985, Mount Vernon police officer Albert Boyd was on foot patrol with Officer Paul Foster when the police department received an anonymous call that a child was being beaten at 631 Lamar Avenue in Mount Vernon. Officer Boyd testified that the officers went to the residence at approximately 11 p.m., and, after they had knocked several times on the door of the residence, defendant answered. Boyd testified that, after he explained he was investigating a report of a child beating, defendant stated: "Yes, I beat him" or "Yes, I hit him." According to Boyd, defendant stated that the officers could not enter without a warrant. Boyd was of the opinion that defendant was intoxicated and stated that defendant was loud and abusive. When defendant started to close the door, Boyd told defendant they didn't need a warrant and the officers went in behind him. A young girl, defendant's daughter, Jackie Williams, was sitting on the sofa and directed the officers upstairs. Boyd testified that as he tried to explain the situation to defendant, defendant walked up to him and called him names and pushed him by bumping the officer with his chest. Officer Boyd related that he took the defendant "down to the sofa with my hands around his neck." Upstairs the officers found Jerry Sanders, defendant's son, age 10 or 11, lying on a bed wearing only undershorts. Boyd testified that the bed appeared to be broken, the boy was sweating and crying, and his left eye and ear were swollen.

The boy was later taken to the hospital and released. There was no bleeding and no bandages were applied. Later it was discovered the

boy had bruises on his buttocks that appeared to have been incurred previously. The record includes photographs of the boy's head, taken July 27, 1985, which indicated slight discoloration and swelling of the left eye.

Officer Foster's testimony differed in some respects from Boyd's. Foster testified that defendant stated he was "spanking his child." Foster corroborated Boyd's testimony that defendant verbally insisted that the officers could not come in without a warrant. Foster testified that the officers walked in anyway without any resistance from defendant. Foster testified, however, that once they were inside, defendant left through the back door while the officers went upstairs to find the boy. The boy was crying and his left eye was swollen. Foster went back downstairs and defendant reentered the residence with his wife, Clara Sanders. Boyd came downstairs shortly thereafter, at which time the confrontation ensued. At this time the officers were attempting a conversation with defendant's wife. Foster testified that defendant appeared to be intoxicated, became very upset and abusive, and then pushed Boyd with his chest. Boyd then "subdued him to the couch."

Mount Vernon patrol captain Robert Smith testified that he was summoned to 631 Lamar shortly after 11 p.m. on July 26, 1985. He observed that the youth in question was crying and his left eye was swollen. He also testified that defendant complained of physical injury at that time and that defendant asked to go to the hospital.

Mount Vernon police officer Carl Williams testified that he took the photographs of the boy in the early morning hours of July 27, 1985. He stated that he was attempting to show the swelling of the boy's right ear and his left eye. Williams also testified that he took a statement from the boy at that time. Officer Williams related the circumstances surrounding the taking of the statement, including the fact that the statement had been taped and that the boy's mother did not object to the taking of the statement. Williams testified that he arrested defendant on the basis of information provided by the boy, his sister and the officers and based on his own physical observations.

The defendant was the only defense witness. He testified that he resided with his sister a few doors from 631 Lamar because he sometimes had problems with his wife. He is the natural father of the two children, Jerry Sanders and Jackie Williams, who were ages 11 and 13, respectively, at the time of trial, although he did not marry Clara Sanders until 1984. He admitted that he had been convicted in 1975 of aggravated battery.

Defendant testified that on the night of the incident he was with

his wife at his sister's residence when his wife asked him to check on the children at 631 Lamar. After discovering that his son was not at home, he went looking for him and found the boy a few blocks away with three or four other children. Defendant testified that the boy was not crying at that time and that he could not see the boy's ear or eye clearly. He testified that he told the boy to go into the house, that he locked the doors to the car, and that he went in the house and directly to the bathroom. It was then that his daughter yelled up to him that someone was at the door. Defendant testified that he did not see his son from the time he sent him into the house until after the officers had seen him. He testified that he told the officers that he had "spanked" his son, not that he had beat him, but he explained that the spanking had occurred about two hours earlier, after the boy had gotten into a fight and torn a screen off of a neighbor's door. Defendant also admitted telling the police that they couldn't come in without a warrant. He testified that Officer Boyd pushed him aside and came inside anyway. Defendant's testimony was consistent with Officer Foster's (and contradictory to Officer Boyd's) in that defendant testified that the confrontation between him and Officer Boyd took place after defendant had gone to get his wife and after the officers brought his son downstairs and stated they were taking him away. According to defendant, he insisted that the boy was not hurt bad and that there was no reason to take the child away, but Boyd insisted and got angry. Defendant testified that he previously "had some words" with Boyd concerning defendant's wife and Boyd had "mentioned whooping me." Defendant then testified: "Officer Boyd—after we was talking he just all of a sudden grabbed me by the neck and he choked me." Defendant stated that he lost consciousness for a few minutes and was bleeding from his neck. He was later taken to the hospital in a police car.

Defense counsel asked defendant to identify photographs of defendant taken after his visit to the hospital, but the trial court sustained the State's objections to any testimony concerning the photographs on relevancy grounds.

Defendant conceded that his son's ear appears slightly swollen in the photographs but denied knowing how it happened. He stated that his son had previous problems with his ear and that the ear sometimes swells from ear infection. Defendant admitted having spanked his son in the past, over the boy's undershorts, with a belt.

As his first issue, defendant urges that he was not proved guilty beyond a reasonable doubt because there was insufficient evidence that defendant struck his child on the eye or ear or that the child's health was injured.

■ When presented with a challenge to the sufficiency of the evidence, the question is whether, when all of the evidence is considered in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) We conclude that there was sufficient evidence in the case at bar for the jury to find defendant guilty beyond a reasonable doubt of cruelty to a child.

■ Section 53 of "An Act to revise the law in relation to criminal jurisprudence" (Ill. Rev. Stat. 1985, ch. 23, par. 2368) provides that "[a]ny person who shall *** injure in health or limb, any child *** shall be guilty of a Class 4 felony." There is testimony in the record that defendant's son's ear and eye were swollen and there are photographs which show the child's swollen eye. Defendant admitted that he told the officers when they arrived at 631 Lamar that he "spanked" the child, and one of the officers testified that defendant stated he "hit" or "beat" his son. Although defendant testified at trial that he had spanked his son two hours earlier because his son had been in a fight, the boy was crying when the officers saw him. Furthermore, defendant apparently did not mention that the spanking had occurred two hours earlier when the police were investigating. When the officers reached the boy's bedroom they found him lying on a broken bed, sweating, crying, and injured. This evidence was sufficient for the jury to find that defendant had injured his son's health by hitting him about the head.

■ ■ As his second issue on appeal, defendant contends that he was denied a fair trial by the admission of and repeated references to hearsay statements and because of improper closing argument. In his opening statement, the assistant State's Attorney told the jury that Jerry Sanders, defendant's son, would testify that he was struck in various manners by defendant, as charged in the information. The information charged that defendant beat his son on the head and body with his hands, a shoe, and a piece from a toy racetrack. The prosecutor also stated that this testimony would be corroborated by the boy's sister and perhaps his mother. However, Jerry Sanders, Jackie Williams, and Clara Williams did not testify at trial.

After the opening statements, the State moved for a continuance on two grounds: (1) the police officers who were about to testify were called to work after an armed robbery of a local bank; and (2) the defendant's son, daughter and wife had not appeared in court to testify. The prosecutor stated to the court that the defendant's daughter had been served a subpoena but that defendant's son and wife had not,

although all three had been mailed a notice of the trial date.

The common law record contains three subpoenas, one each for Jerry Sanders, Jackie Williams and Clara Williams, which indicate that they were served on each person on September 13, 1985, requiring their appearance on September 17, 1985, the original trial date. These documents, filed September 23, 1985, were signed by Deputy Sheriff Mark Junkins and each indicated sheriff's fees of $11.80. In a subsequent offer of proof, a secretary in the State's Attorney's office testified that subpoenas had been issued for each of the three intended witnesses for the original trial date and that she had assumed that they had been served because she had not heard from the sheriff's office. She testified that she mailed notices of the new trial date of October 22, 1985, to each witness.

Mark Junkins testified that he was able to serve a subpoena on Jackie Williams but not Jerry Sanders or Clara Williams. He identified three exhibits, which were copies of the subpoenas contained in the common law record. However, of the exhibits, only the Jackie Williams subpoena included his signature showing service. Officer Junkins was not asked to explain the signatures on the subpoenas included in the common law record.

At the hearing on the motion for continuance, the prosecutor stated that officers were trying to locate the children and the mother but suggested that defendant and his family were attempting to undermine the court process. The court allowed a long recess but denied the motion.

It is error for the State to claim in its opening statement that it will produce evidence which is never submitted to the jury. (*People v. Warmack* (1980), 83 Ill. 2d 112, 125, 413 N.E.2d 1254, 1260; *People v. Rogers* (1976), 42 Ill. App. 3d 499, 502-03, 356 N.E.2d 413, 416.) While the prosecutor's misstatement may not have been reversible error in and of itself (compare *People v. Trass* (1985), 136 Ill. App. 3d 455, 465, 483 N.E.2d 567, 575 (reversible error only where deliberate misconduct and substantial prejudice), with *People v. Graham* (1985), 132 Ill. App. 3d 673, 684, 477 N.E.2d 1342, 1350 (denial of fair trial if improper comments are a material factor in conviction)), when it is considered together with other errors which occurred at trial, we conclude that defendant was denied a fair trial.

Defendant further contends that he was denied a fair trial by other improper references during the trial to the hearsay statements of the victim and the victim's sister, by references to a police radio dispatch as substantive hearsay evidence, by reference to the contents of the information as evidence of guilt, and by the prosecutor's suggestion in

closing argument that defendant was responsible for the absence from trial of the defendant's children.

The relevant portions of the record are as follows:

"Q. [Assistant State's Attorney Crego] What was the reason you went to that residence?

A. [Officer Boyd] We received an anonymous call that a child was being beaten.

\* \* \*

Q. What was the next thing you did in the investigation in this case?

A. After I got inside I asked the young lady where—where was the kid that was being beaten and she said he was upstairs."

An objection was made to the latter answer, but no request was made to instruct the jury to disregard the testimony. Still during Boyd's direct examination, Boyd was asked to identify People's exhibit 3, and he stated: "That's the front view of the young man that stated he had been beaten." Defense counsel objected and requested that the jury be instructed to disregard the answer. The court sustained the objection but did not instruct the jury as requested.

During the direct examination of Officer Foster, he testified, over objection, that he and Boyd "[r]eceived a report via the radio by dispatch of a man beating a child." The prosecutor argued that the testimony went to notice.

During the direct examination of Officer Williams, the prosecutor elicited testimony that Williams had taken a statement from the victim and the victim's sister on the morning after the incident; that an employee of the Department of Children and Family Services was present; that the victim's statement was taped; that the children's mother was present in the police department at the time; and, over objection, that the children's mother did not object to the taking of the statements. Finally, Williams testified on direct examination that he made his arrest based on information provided by the minors and also by the officers. On redirect examination Officer Williams further testified that the basis of defendant's arrest on the cruelty charge was the "taped officers' reports and also statements," and his "physical observations."

During closing argument to the jury, the prosecutor told the jury they would have to rely on the officers' testimony and the photographs. During rebuttal, however, the prosecutor stated:

"There's no explanation for why somebody called in an anonymous report \* \* \*.

* * *

*** Taking into account the picture, taking into account the officer's testimony, take into account the—that when Defendant was finally arrested, by Carl Williams, that he relied on the information and the statements that were presented him by police and by the children."

The prosecutor also suggested during rebuttal that defendant was responsible for the children's absence from the trial.

We believe that, contrary to defendant's contention, the prosecutor's reference in the last quoted portion of closing argument to Officer Williams' reliance on "the information" was a reference to information provided by police (and the children) and not a reference to the charging instrument.

■■■ However, it is a long-established legal principle that hearsay evidence is generally not admissible. (See *People v. Harrison* (1962), 25 Ill. 2d 407, 414, 185 N.E.2d 244, 248.) Although a police officer may testify regarding an investigatory procedure, the officer may not testify to the substance of a conversation with a third party. (See *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 1077, 405 N.E.2d 1306, 1315.) Therefore, it was improper for Officer Boyd to testify "I asked the young lady [Jackie Williams] where—where was the kid that was being beaten and she said he was upstairs." It was likewise error for Boyd to testify, while identifying the boy's photo, that the subject was "the young man that stated he had been beaten." Although objections to these statements were sustained, the jury was not instructed to disregard the answers. Furthermore, we do not believe the prejudice to the defendant was cured by the pattern jury instructions given. This is especially true in light of other errors which were not objected to at trial.

■■ It was improper for Officer Williams to testify regarding the circumstances of the taking of Jerry Sanders' statement. It was also improper for Williams to testify that he arrested defendant based on the statements of the children. We recognize that a police officer may properly testify as to the events that led to the arrest of an accused under certain circumstances. (See, *e.g.*, *People v. Williams* (1978), 62 Ill. App. 3d 966, 973-74, 379 N.E.2d 1268, 1274-75.) However, Williams' testimony went beyond what was necessary to describe the investigation and arrest. Probable cause to arrest was not an issue. Furthermore, the prosecutor in his closing rebuttal argument alluded to this testimony as substantive evidence indicating defendant's guilt. Arguing the applicability of evidence beyond the limited purpose for which it is admissible is plain error. See *People v. Crossno* (1981), 93

Ill. App. 3d 808, 823, 417 N.E.2d 827, 837.

■■ A similar analysis applies to the testimony concerning the police dispatch. It was proper for Officers Boyd and Foster to testify that they went to 631 Lamar to investigate an anonymous report of a child's being beaten. However, the prosecutor emphasized this evidence beyond the limited purpose for which it was admissible when he argued to the jury during rebuttal closing argument that the defendant had not explained the anonymous telephone call. Such an argument was especially prejudicial since defendant could not cross-examine an anonymous telephone caller and the defense had no opportunity to explain to the jury that defendant did not bear the burden of explaining the telephone call.

■■ Finally, we conclude that it was improper for the prosecutor to suggest, again during rebuttal closing argument, that defendant was responsible for Jerry Sanders' absence from trial. Although Jerry Sanders was defendant's son, defendant did not always live with his wife and children. More importantly, according to the testimony of Deputy Sheriff Junkins at the motion hearing, the State had not served a subpoena requiring Jerry Sanders to testify. We note that the boy's sister was served on September 13, 1985, over one month before the trial of this cause.

In assessing these errors, we must consider them individually and collectively, and we must consider the nature of the evidence against the defendant. (*People v. Johnson* (1981), 102 Ill. App. 3d 122, 129, 429 N.E.2d 905, 911.) After doing so, we conclude that the cumulative effect of these errors substantially prejudiced defendant and denied him a fair trial. Despite the fact that the State presented no eyewitness testimony of the alleged beating, the State managed to tell the jury during the opening and closing arguments, and by eliciting testimony from police officers, that the victim made a statement to police that defendant had beaten him, the manner in which the beating allegedly occurred, and that the boy's sister corroborated the substance of the statement. Without considering the improper argument and evidence, the evidence against defendant was closely balanced. There was no eyewitness testimony to the alleged beating. The child's injuries were relatively slight, and defendant presented reasonable alternative explanations for the injuries, *i.e.*, a fight with other boys along with a recurring ear infection.

The errors at trial may well have been a material factor in defendant's conviction, and the verdict may well have been different if the improper argument and evidence had not been presented. Although some of the errors were not objected to at trial, we perceive them to

be plain error affecting a substantial right, *i.e.*, the right to a fair trial, and choose to consider them under Supreme Court Rule 15(a) (107 Ill. 2d R. 615(a)). See *People v. Morgan* (1960), 20 Ill. 2d 437, 441, 170 N.E.2d 529, 531.

In light of the foregoing, we reverse defendant's conviction for cruelty to a child and remand for a new trial on that charge.

■■■ The defendant also contends that the trial court erred in denying his motion *in limine* to bar defendant's impeachment by the admission of evidence of his 1975 aggravated battery conviction. We note that at the hearing on the motion, which occurred before the defendant opened his defense, the prosecutor argued that the prior conviction "obviously indicates that [*sic*] the Defendant's predisposition for violent activities and, therefore, is extremely probative—not probative, but extremely important and nonprejudicial in this case." However, it is well-settled law that evidence of a defendant's prior conviction is never admissible to show defendant's violent propensities or as evidence of his guilt. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 514, 268 N.E.2d 695, 697.)

> "To determine whether the prejudicial effect of a conviction substantially outweighs its probative value the trial court must consider four factors set forth in *Montgomery*: (1) the nature of the crime, that is, whether the prior conviction is relevant to veracity; (2) the nearness or remoteness in time of the conviction to the present trial insofar as it relates to the degree of defendant's rehabilitation; (3) the subsequent career of the defendant insofar as it too relates to the degree of defendant's rehabilitation; and (4) the similarity of the prior conviction to the present charge because such similarity often invites an improper inference of guilt rather than directs attention to the defendant's credibility." (*People v. Minor* (1983), 115 Ill. App. 3d 1046, 1050, 451 N.E.2d 1011, 1013.)

The record of the hearing on the motion *in limine* indicates that only one of the four factors was mentioned: Public Defender Charles Stowe argued to the trial court that the remoteness of the conviction (9 years, 10 months) lessened its probative value.

The State urges us to assume that the trial court weighed the appropriate factors in denying the motion, relying on *People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276. However, in *Washington* it was apparent from the record that the court was aware of the relevant factors and applied the balancing test. (55 Ill. 2d 521, 523-24, 304 N.E.2d 276, 277.) In this regard, the record must indicate that the court actually applied the balancing test. *People v. Ellison* (1984), 123

Ill. App. 3d 615, 631, 463 N.E.2d 175, 186-87.

From the record in the case at bar we are unable to determine whether the trial court balanced the probative value of the proffered evidence with its potential prejudice. The court simply stated: "I think it's not that prejudicial." Based on the information available to the trial court, we conclude that the court erred in denying the motion.

We note that: (1) the evidence of a prior conviction for aggravated battery has relatively little, if any, probative value as to a witness's veracity (see *People v. Wright* (1977), 51 Ill. App. 3d 461, 464-65, 366 N.E.2d 1058, 1061-62); (2) the prior conviction was extremely remote from the date of trial as it was less than 60 days short of being stale under the 10-year limit imposed by *Montgomery*; (3) although the presentence investigation report reveals that defendant had been convicted of numerous traffic and ordinance violations and one misdemeanor in the intervening 10-year period, there is no indication that the trial court had this information at the time of the hearing on the motion; and (4) the offense of aggravated battery is similar to the offense of cruelty to a child and therefore the danger of unfair prejudice is increased because a similar prior conviction tends to suggest not only that the defendant has a propensity to commit crime but that the propensity runs toward the crime charged. *People v. Medreno* (1981), 99 Ill. App. 3d 449, 453-54, 425 N.E.2d 588, 592.

We conclude that the trial court erred in allowing impeachment of defendant by evidence of defendant's prior aggravated battery conviction. Because defendant's credibility was crucial to the determination of his guilt or innocence on the obstructing a police officer charge, and the evidence on that charge was not overwhelming, we must reverse that conviction and remand for a new trial on that charge also. We therefore need not discuss defendant's remaining contentions.

For the foregoing reasons, defendant's convictions for cruelty to a child and obstructing a peace officer are reversed and this cause is remanded for a new trial.

Reversed and remanded.

KARNS, P.J., and LEWIS,* J., concur.

---

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.