IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32297-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TODD R. JOHNSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Todd Johnson appeals his conviction of fourth degree assault, challenging the trial court's refusal to give an instruction on defense of property. He claims he was defending his dogs from harm and his real property from malicious trespass at the time he struck the victim. Review of the record reveals, however, that the only evidentiary support for lawful use of force was in arguable self-defense. The trial court instructed the jury on self-defense but the jurors evidently believed the victim, not Mr. Johnson.

Because the evidence did not support a defense of property instruction, and for the additional reason that Mr. Johnson's lawyer relented and ultimately agreed to the instruction that is now challenged, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On August 11, 2011, Todd Johnson fought with Charles Haltom, who had been canoeing near Mr. Johnson's residential property on Bay Lake. Mr. Haltom ended up with broken ribs. Following an investigation by the Pierce County sheriff's department, the Pierce County prosecutor charged Mr. Johnson with second degree assault.

At trial, witnesses provided two diametrically different versions of what had occurred.

In the State's case, Mr. Haltom testified that on the August afternoon of the assault, he had loaded his canoe with a weighted buoy, an inner tube, and a cooler, and paddled his canoe out onto Bay Lake, the public lake on which he lived. He then cast his inner tube into the water and began to float and drink a few beers.

After about three hours, he got back in his canoe and was paddling home when he heard dogs barking as he passed a boat dock. One dog entered the water and approached his canoe. A woman on the shore yelled at him, calling him "'white trash,'" and telling him to "'[g]et out of here.'" Report of Proceedings (RP) (Sept. 11, 2012) at 33. Mr. Haltom responded to the woman, whom he later identified as Valerie Johnson, the defendant's wife, that he was canoeing on a public lake and she could not order him to leave. He also told her that her dogs were being aggressive. Ms. Johnson told him she was going to call the sheriff and angrily went inside her home. Mr. Haltom assumed that she *was* going to call the sheriff and decided to remain in his canoe and wait for law

2

enforcement officers to arrive. As he explained at trial, he had never had his right to canoe on the lake challenged before, and he wanted to wait for the sheriff and settle the matter.

Mr. Haltom testified that Ms. Johnson then re-emerged from the house, this time with a gun in her hand. She yelled that she had called the sheriff and her husband. Mr. Haltom responded "good," "I want the sheriff here." *Id.* at 47. She soon left again.

Mr. Haltom continued to await the sheriff's arrival, paddling to stay in place, with his back to the Johnsons' dock, when he heard the footsteps of someone running on the dock and a big splash. He turned his canoe and saw someone whom he later identified as Mr. Johnson swimming rapidly toward him. When he reached the canoe, Mr. Johnson grabbed its bowline and began to bring it to shore. Once the canoe was close enough for Mr. Johnson to stand, he flipped Mr. Haltom out of the canoe and began to beat him. Mr. Haltom said that he pleaded for his life as Mr. Johnson held him underwater with one hand and punched him with the other. He claims that Mr. Johnson hit him 15 or 20 times. Eventually Mr. Johnson stopped beating Mr. Haltom and told him to "[g]et out of here." *Id.* at 66. Mr. Haltom managed to canoe home and called the sheriff. He was admitted to the hospital, where he was treated for broken ribs and blood in his urine.

Mr. Johnson's version of events was that he was driving toward his home with family members he had picked up from the airport when he received a call from his wife. According to him, she said there was a man who had arrived by canoe who was on their property "jabbing at the dogs and trying to bait [them]." RP (Sept. 18, 2012 Test. of

3

Todd Johnson) at 26. He told her to call 911. A few minutes later, Ms. Johnson called Mr. Johnson again, this time telling him that Mr. Haltom was beating their dogs with an oar. This time, Mr. Johnson told her to get a handgun and let the man know she was armed. Upon arriving home, Mr. Johnson said he saw Mr. Haltom standing on his property near a beached canoe at the shoreline, "tomahawking" the Johnsons' dogs. Mr. Johnson described "tomahawking" as the act of "[h]olding a stick with two hands on the oar, and [chopping] overheard with both hands." *Id.* at 34.

Mr. Johnson testified that he yelled at Mr. Haltom to stop hitting the dogs and ran at full speed to where Mr. Haltom was standing. He claims that as he got close, he was going to run into the dogs so he tried to slow down, tripped, and fell next to the canoe. He testified that as he tried to stand up, Mr. Haltom attacked him with the paddle. According to Mr. Johnson, a struggle ensued over the paddle, with both swinging at and punching one another. He claims they eventually agreed to stop fighting. Mr. Johnson's wife, his stepfather, and his stepbrother all testified at trial and for the most part corroborated Mr. Johnson's version of events.

During trial, there were discussions of jury instructions outside the presence of the jury. Both the State and Mr. Johnson submitted proposed instructions. A packet of replacement and supplemental instructions submitted by the State included one with the handwritten caption, "Self-Defense etc. (IF APPLICABLE)." Clerk's Papers (CP) at 4. It was adapted from WPIC 17.02, entitled "Lawful Force—Defense of Self, Others,

4

No. 32297-1-III
*State v. Johnson*

Property." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02, at 253 (3d ed. 2008) (WPIC). It set forth all of the alternative defenses covered by that pattern instruction, including defense of property and defense against malicious trespass.[1] Mr. Johnson did not submit a defense of property instruction.

The final conference on the jury instructions took place on the morning of the last day of trial. At that time, the prosecutor asked the trial court to remove from his proposed lawful force instruction any reference to defense of others or defense of property, arguing that there was no evidence to support either defense. According to the prosecutor:

---

[1] The State's proposed instruction stated:
It is a defense to a charge of Assault that the force used was lawful as defined in this instruction.
The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured, by someone lawfully aiding a person who he reasonably believes is about to be injured, in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.
The use of force upon or toward the person of another is lawful when used in preventing or attempting to prevent a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, and when the force is not more than is necessary.
The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.
The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.
CP at 4.

5

Clearly, an assault takes place. I don't think that the defense is disputing that Todd Johnson struck the victim. And the testimony was very clear that he was doing it to protect himself. Valerie was nowhere around. The dogs weren't around at the point that the assault took place. There was no defense of property. . . . However [Charlie] ended up in the water, . . . by the defense theory [he] was coming at the defendant, swinging, and that was why the defendant swung back. That is their theory of the case.

. . . .

. . . And that is simply self-defense, rather than defense of others or defense of property.

RP (Sept. 19, 2012 Jury Instruction Arg.) at 3-4.

Mr. Johnson's lawyer opposed the State's request to remove portions of the proposed instruction. He argued that "there is evidence that the confrontation occurred because the—Mr. Haltom, the alleged victim, was swinging at the dogs, the property of Mr. and Ms. Johnson." *Id.* at 4. Continuing, he argued:

[A]t the time that he's confronting the alleged victim at the water line, he is there for three reasons: To deal with the trespass that's on his property; to deal with the assault that's occurring on his dogs; and to deal with the threats that he made against his wife.
. . . We're entitled to argue all of that. That is all something that can be instructed, and there we go.

*Id.* at 5. When the court responded by asking Mr. Johnson's lawyer if he had any case law that would help the court with its ruling, the lawyer responded that he did not, because the issue had just come up.

Having heard from the lawyers, the court said that its ruling "at this time" was to leave out instruction about a malicious trespass or interference with property because it would be confusing and "at least to this time, there is no evidence that the assault

6

occurred based on that." *Id.* at 10-11. He pointed out that limiting the instruction in that

manner would not prevent Mr. Johnson's lawyer "from arguing all of the circumstances

known to the person at the time of the incidence. And clearly, there's evidence in the

record." *Id.* at 11. He concluded that "unless there's some case law to give me more

instruction, this is what I believe is the proper instruction." *Id.* Mr. Johnson's lawyer

replied, "I will prepare—if we need to, I'll address the issue at lunchtime and have

something at 1:30." *Id.*

Later that morning, the following exchange took place outside the presence of the

jury, during a break from the testimony of the last rebuttal witness:

> [THE COURT:] . . . Let's bring the jury back in. I have the
> instructions ready, so maybe we should go ahead and . . . copy the
> instructions now. I can instruct the jury.
> [DEFENSE COUNSEL]: And Your Honor, I've been thinking
> about it. I actually don't think—I think that I'm fine with the instruction
> the way that the Court has rewritten the self-defense instruction. It allows
> me to get what I want. I don't think it's that—
> THE COURT: Okay. So you're withdrawing your objection.
> [DEFENSE COUNSEL]: I'll withdraw my—I just want to make—I
> am actually happy to move along. I don't think the case law is going to
> give me anything. It gives me everything I want to argue. It's—we're
> prepared to go, and I think I'd rather just have that ready to go. So I just
> want to make sure the Court's aware.

RP (Sept. 19, 2012 Excerpt of Proceedings) at 48-49.

A jury acquitted Mr. Johnson of the second degree assault charge, but found him

guilty of the lesser degree offense of fourth degree assault. He appeals.

7

ANALYSIS

Mr. Johnson's only assignment of error on appeal is to the trial court's "den[ial of] Mr. Johnson's request for 'defense of property' language in jury instruction # 15." Br. of Appellant at 1. The State responds that (1) by failing to propose a defense of property instruction, Mr. Johnson failed to preserve error, citing RAP 2.5(a); (2) Mr. Johnson affirmatively waived or invited error by his statements; and (3) in any event, the trial court did not abuse its discretion in refusing to give the instruction, since defense of property was not Mr. Johnson's theory and was not supported by the evidence.

As to the RAP 2.5(a) issue, we conclude that initially, at least, Mr. Johnson adopted the State's lawful force instruction and objected to removing the defense of property language. The fact that his lawyer had adequately stated an objection at the final instruction conference is apparent from the fact that later that morning—after Mr. Johnson's lawyer told the court that the instruction as modified "allows me to get what I want"—the trial court said, "Okay. *So you're withdrawing your objection.*" RP (Sept. 19, 2012 Excerpt of Proceedings) at 48 (emphasis added). In any event, RAP 2.5(a) is discretionary and we choose to consider Mr. Johnson's appeal.

Of the two issues that remain, we first address the sufficiency of the evidence to support giving the State's lawful force instruction as originally proposed. We conclude that the trial court correctly refused to instruct the jury on defense of property or malicious trespass of property. We next address the issue of waiver or invited error and

8

agree with the State that if there was error, it was invited.

### I.    *The defense was not supported by the evidence*

Mr. Johnson contends that one of his theories at trial was that he was defending property: his dogs. He testified that when he saw Mr. Haltom "tomahawking" his dogs with a canoe paddle, he ran to protect them from further injury. He argues that under RCW 9A.16.020, his use of force would also have been lawful to prevent malicious trespass and interference with real property, which he believed had taken place given his wife's reports that Mr. Haltom had been on the property and refused to leave.

Jury instructions as a whole must correctly apprise the jury of the law and enable a defendant to argue his defense theory. *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984). "A criminal defendant is entitled to an instruction on his or her theory of the case if the evidence supports the instruction." *State v. Werner*, 170 Wn.2d 333, 336, 241 P.3d 410 (2010). Failure to so instruct is reversible error. *State v. Harvill*, 169 Wn.2d 254, 259, 234 P.3d 1166 (2010).

To determine whether a defendant is entitled to an instruction on a lawful use of force, "the trial court must view the evidence from the standpoint of a reasonably prudent person who knows all the defendant knows and sees all the defendant sees." *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). In evaluating a self-defense claim, therefore, the court "applies both a subjective and objective test." *Id.* at 242-43. Stated differently, a defendant bears the initial burden of pointing to evidence showing that he

"had a good faith belief in the necessity of force and that that belief was objectively reasonable." *State v. Dyson*, 90 Wn. App. 433, 438-39, 952 P.2d 1097 (1997).

The standard under which this court reviews a trial court's refusal to instruct the jury on self-defense depends on whether the reason for its refusal was based on fact or law. Where a trial court refuses to instruct on a defense because it finds insufficient evidence to support it—an issue of fact—the standard of review is abuse of discretion. *Read*, 147 Wn.2d at 243.

When Mr. Johnson was questioned by his lawyer, he explained that he tripped while running toward Mr. Haltom at a point where he was about to run into his dogs, causing the two dogs to take off in opposite directions:

> Q. . . . [W]hen you ran towards [Mr. Haltom], what's the next thing that happened?
> A. The dogs saw me coming and one went this way. (Indicating.)
> Q. One went this way?
> A. I'm sorry. Fritzie went to, looking at the picture, the left side and Diesel went the right side. And I was going to run into them, and I tried to slow down and I did a face plant, I mean, right in front of the canoe. I bumped the canoe, so I made the canoe move, rock.
> Q. So you—you fell?
> A. Yeah.

RP (Sept. 18, 2012 Test. of Todd Johnson) at 36.

In Mr. Johnson's testimony about what happened thereafter, his explanation for every use of force against Mr. Haltom was to defend *himself* from harm. He testified, for example, "[A]s I was standing up, I just blocked a—the oar coming down in my face," *id.*

10

at 37; next, "[W]hen I blocked [the oar], I can't remember if he came down again or if I grabbed it that time," *id.* at 39; next, "I got ahold of [the oar] . . . I twisted my body to the right . . . [a]nd the—the boat turned sideways, and he fell," *id.* at 39-40; next, "And then he jumped up and started roundhousing me . . . [s]winging with everything he had," *id.* at 41; next, "When he was swinging at me, I was either ducking this way or ducking this way. (Indicating.)," *id.*; next, "He would lead with his left and then really over-swing with his right," in response to which "I returned punches," *id.* at 42; next, "[H]e would throw two [punches], I would throw two. He would throw two, I would throw two. He would throw two, I would throw two," *id.*; and finally, "The fight stopped with a blow to his midsection, and he let out a gasp of air and said, 'Okay. I'll leave.'" *Id.* at 42-43.

Mr. Johnson called his wife, his stepfather, and his stepbrother as witnesses in the defense case. All three claimed to have witnessed Mr. Haltom's fight with Mr. Johnson, all three described Mr. Johnson as acting to defend himself as Mr. Haltom attacked him, and none mentioned that either dog was in the vicinity or imperiled by the two men's fight.

The prosecutor and the trial court recalled the testimony correctly; the dogs were out of the picture at the time of the assault.

Defense of property is not the same as retaliating against someone who has already damaged property; it is not the same as acting in revenge. "'[T]he right of self-defense does not imply the right to attack in the first instance or permit action done in retaliation or revenge.'" *State v. Janes*, 121 Wn.2d 220, 240, 850 P.2d 495 (1993)

11

(alteration in original) (quoting *People v. Dillon*, 24 Ill. 2d 122, 125, 180 N.E.2d 503 (1962)); *accord State v. Studd*, 137 Wn.2d 533, 550, 973 P.2d 1049 (1999). The fact that Mr. Johnson had been told of an earlier "baiting" of his dogs was not a basis for a defense of property instruction.

As for malicious trespass, the "reasonable force" that may be exercised to prevent one from trespassing includes confinement of the trespasser or putting him in fear of physical harm. 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 14.23, at 593 (4th ed. 2013) (citing RESTATEMENT (SECOND) OF TORTS § 80 (1965)). If a property owner responds with greater force because of an assault or fear of assault by the trespasser, then he is engaged in self-defense, not defense against a trespass, and his right to self-defense applies. *See id.*

Mr. Johnson described only acts of self-defense, the jury was instructed on the defense of self-defense, and the jury evidently did not believe Mr. Johnson. The trial court's instruction 15 adequately set forth the defenses that were supported by the evidence.

*II. Waiver or invited error*

Alternatively, the State contends that Mr. Johnson affirmatively waived his initial objection to the narrowing of the lawful force instruction. The invited error doctrine prohibits a party from setting up an error at trial and then complaining of the error on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996). A party may invite error by affirmatively assenting to it, materially contributing to it, or benefiting

from it. *State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009). "Under the doctrine of invited error, even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction or agreed to its wording." *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005).

At the time that Mr. Johnson's lawyer originally objected to the narrowing of the lawful force instruction, the trial court pointed out to him that even as narrowed, the instruction would permit him to argue the circumstances known to Mr. Johnson as a basis for the amount of force he used in self-defense. In its final form, the instruction included the statement that

> [t]he person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

CP at 32.

In the trial court's last discussion with the lawyers before instructing the jury, Mr. Johnson's lawyer withdrew his objection to the narrowed lawful force instruction, having realized, it appears, that the trial court had given him all the instruction to which he was entitled in light of the evidence.

Mr. Johnson now argues that his lawyer stopped short of withdrawing his objection by saying only, "I'll withdraw my—" not "I'll withdraw my objection." Reply Br. of Appellant at 5. This is hairsplitting. It is clear from all that Mr. Johnson's lawyer

13

No. 32297-1-III
*State v. Johnson*

said that he was withdrawing his objection. After all, among the things he said was, "I'm fine with the instruction the way that the Court has rewritten the self-defense instruction. It allows me to get what I want." RP (Sept. 19, 2012 Excerpt of Proceedings) at 48. That is all that a party is assured under the law.

If Mr. Johnson's lawyer's concession was not classic invited error, it is only because it was made very late, after the trial court had already finalized its instructions. One cannot say, however, that the court would not have modified the instruction had Mr. Johnson's lawyer not made it clear he was satisfied with the instruction as given. For this additional reason, Mr. Johnson's appeal fails.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

14